JOHNSON & JOHNSON, respondent,

*v.*

SEABURY & JOHNSON, appellant.

[Argued June 20th, 1906. Decided June 17th, 1907.]

Where a complainant seeks to protect a trade name from unfair competition, he will not be refused relief merely because for several years he circulated catalogues and price lists containing false statements as to his exclusive right to the name, where it is not proved that the trade name owes its value in a material degree to the false representations, and the publication has ceased prior to the filing of the bills.

On appeal from a decree of the court of chancery, advised by Vice-Chancellor Bergen, whose opinion is reported in *69 N. J. Eq. (3 Robb.) 696.*

*Mr. Willard P. Voorhees* and *Mr. Archibald Cox* (of the New York bar), for the complainant, respondent, *Mr. Charles G. Coe,* on the brief.

*Mr. Charles L. Corbin* and *Mr. William Brinkerhoff,* for the defendant, appellant.

The opinion of the court was delivered by

SWAYZE, J.

The evidence establishes that the absorbent cotton and gauze of the complainant have been known for a number of years as "Red Cross Cotton" and "Red Cross Gauze;" that the words "Red Cross," as applied to absorbent cotton and gauze, have acquired in the trade a secondary meaning and designate goods of the complainant's manufacture. The time when this secondary meaning was acquired is not and probably cannot be fixed with certainty. Doubtless it was, as usually happens in cases

of the kind, a gradual growth. We see no reason to doubt the testimony of witnesses who fix the date as early as 1892 or 1893. The testimony of other witnesses fixing later dates does not conflict with these statements, since the later dates fixed by them are necessarily only the dates of their own knowledge of that use of the words. The time when the manufacture was begun by the complainant, the prominence given by it to the red cross on its packages, the persistency of its use on large and small packages alike, and the vigorous efforts of complainant to protect its use of the words against harmful legislation in 1894, sustain this view.

We are satisfied also that the defendant has unfairly simulated the complainant's packages of absorbent cotton. The original business connection between the predecessors of complainant and the predecessors of defendant, the competition which resulted from their separation, and the original controversy as to the merits of interleaving cotton with tissue paper, show that the defendant was familiar with complainant's method of packing goods.

In view of this knowledge, we cannot explain the change in the color of the carton in which an inferior grade of defendant's cotton was packed, from granite and chocolate to dark blue, the use of granite cartons for the best grade and dark blue for the inferior grade, the use of the "Mercury" seal on the former and the "Red Cross" seal on the latter, the increased prominence given to the red cross by defendant after a somewhat irregular use for so many years, and the adoption of the interleaving by tissue paper of the same color as complainant's, upon any theory except that of an effort on the part of defendant to profit by complainant's trade. The injury was increased by the attempt to confuse the complainant's cotton with an inferior grade. If the defendant had desired to avoid confusion it had only to continue its previous course of business.

The question as to gauze is more difficult. The defendant was the first to use an amber glass jar, and the color was later adopted by the complainant, whose motive in doing so does not seem to be questioned. The defendant then changed from a round jar to a square jar like that of complainant. The change

is suspicious, but in view of the fact that the red cross was not used on defendant's jar, we are not prepared to say that there was an intent to simulate complainant's packages. The use of the red cross seal on the "glazed container," however, indicates a desire to connect the name "Red Cross" with defendant's gauze, and although we think, for reasons to be stated, that the use of the seal itself was permissible, the complainant is entitled to protection in the use of the name. The additional wrapper which was used by the defendant as an excuse for the use of the red seal was an extra trouble and expense, and the reason alleged for adopting it—the protection of the ornamental labels—does not appeal to us with any great force. The protection had not been found necessary during the previous use of the glazed containers for some years, and it was quite unnecessary to seal the exterior packing with a red cross seal when the red cross was not elsewhere used in connection with gauze.

The greatest difficulty we have had has been with the right of the complainant to claim relief in equity. Beginning with 1894 and continuing for several years, at least until 1899, the complainant circulated catalogues and price lists containing a statement that an act of congress had vested the use of the red cross symbol in the American National Red Cross Society, and that the society in recognition of the services of the complainant, in perfecting surgical appliances and medicinal preparations, had granted to complainant the exclusive right to use the red cross trade mark upon this class of preparations. This statement was untrue. The only foundation for it was that the red cross society, in order to induce the complainant to withdraw opposition to a pending bill intended to secure the exclusive use of the red cross to the society, had recognized the exclusive right of the complainant to the red cross as a trade mark on chemical, surgical and pharmaceutical goods, and had agreed not to contest complainant's exclusive right in case the bill passed.

There is no question about the principle that a false representation in a trade mark will prevent equitable relief for its protection. The cases cited by the defendant are, with one exception, cases where the false representation was contained in the trade mark itself. In such a case it is quite impossible to deter-

mine to what extent good will, for which protection is sought, has been created by the false assertion, and to afford protection to a trade mark containing a false representation would perpetuate the falsehood by the decree of the court. A very different question is presented where, as in this case, the false representation is contained in trade literature, which may or may not have contributed to the good will which is to be protected. Allowance must be made for what in the law of sales is called mere dealers' talk and for trifling inaccuracies or faults. No one has ever supposed that every statement of a trade advertisement is a warranty and must be proved true on penalty of losing the whole good will of the business. The difficulty is to determine what inaccuracies may be disregarded as mere puffing. An illustration of a trifling inaccuracy is found in *Clark Thread Co.* v. *Armitage, 67 Fed. Rep. 896; 74 Fed: Rep. 936.* The English courts have even gone so far as to hold that the false statement that a shirt was patented when made only in invoices and advertisements, would not debar the complainant from relief. In that case the complainant described himself as patentee of the shirt in every invoice which he gave to every purchaser as well as in publications. Yet the court of appeal reversed Vice-Chancellor Bacon and gave relief. Lord-Justice Mellish, with the approval of Lord-Justice James, said: "I am, therefore, very clearly of opinion, and I do not think there can be any doubt about it, that the fact of these false representations of the article being a patent having been made to some of the public, would be no answer at all to an action. Indeed, there would be this great difficulty to be solved, how much misrepresentation must be made to be an answer to an action? Not only that, but it would be very difficult to say, where the fraud is not in the trade carried on, how far the misrepresentation must go or to what extent the misrepresentation must extend, before it would be an answer to an action or a suit." *Ford* v. *Foster, L. R. 7 Ch. App. 611; 41 L. J. Ch. 682.* The particular question has never been reviewed in the house of lords, but the extent to which the English courts will go in protecting a trader whose conduct has, in the main, been fair, is shown in the case of *Cochrane* v. *Macnish, A. C. 225 (1896); 65 L. J. P. C. 20.* The appellants claimed

a trade mark for "Club Soda," upon which were the words "Manufactured in Ireland by H. M.'s Royal Letters Patent." The court of Jamaica held the statement false and refused relief. The appellants contended before the privy council that the words meant "manufactured in Ireland by means of patented machinery," and that thus interpreted the words were true. The privy council took this view and reversed the judgment.

In this country we have a case in a federal court of first instance in which a different view was taken. *Preservaline Manufacturing Co.* v. *Heller Chemical Co.*, 118 Fed. Rep. 103.

The question was suggested by Vice-Chancellor Emery in *Stirling Silk Manufacturing Co.* v. *Sterling Silk Co.*, 59 N. J. Eq. (14 Dick.) 394, but not decided.

We think the rule laid down in *Ford* v. *Foster* is too favorable to the complainant. If it can be established in any case that the trade name which the complainant seeks to protect owes its value in any material degree to false representations on his part, we think he is not entitled to the protection of a court of equity. To give him relief would not perpetrate a falsehood by decree of the court as in a case where the false representation is on the face of the trade mark or label, but it would enable a man to profit by his own wrong, and the court would be in the position of protecting a property right acquired by fraud. But we think there is no presumption that a trade reputation is due to the highly-colored or false statements in advertisements. Such statements are not so uncommon as to mislead an ordinary man; most persons discount them. In the present case the complainant's goods had come to be known as "Red Cross Cotton" and "Red Cross Gauze" before the first publication in question; it was the already existing reputation which led it to oppose with vigor the proposed legislation by congress. To afford relief does not, as the case stands, give prolonged life to the misrepresentation, for the publication had been discontinued before this suit was begun. We do not say that the mere discontinuance of publication before suit brought would cleanse the complainant's hands; we hold that in the absence of proof that the trade name was due to false representations, and upon proof that the false representations had ceased, the complainant is entitled to protection.

Although we think the complainant is entitled to relief, an examination of the decree advised by the learned vice-chancellor convinces us that it goes too far. It restrains the defendant from all use of a red cross in connection with cotton or gauze. The proof shows that the red cross has long been commonly used in connection with surgery, and that the defendant, prior even to the beginning of business by the predecessors of the complainant, had used a red cross in connection with some surgical goods, and, if not on absorbent cotton and gauze, on articles of the same general class. This right ought not to be taken from them. The extent of the restraint to which the complainant is entitled is such as will prevent the confusion of the defendant's goods with the complainant's, except so far as such confusion must necessarily arise out of the continued use of the red cross by the defendant as it was formerly accustomed to use it. In fixing the extent of this use, justice will be done if the defendant is allowed to use the red cross in no more conspicuous way than in its *Exhibits D 3, D 4, D 6, D 7* and *D 12*. This excludes the use of two red crosses.

An injunction should issue restraining the defendant from selling, offering to sell or otherwise disposing of any absorbent cotton not by or for complainant made in packages to which a representation of two red crosses shall be attached or applied, or to which a representation of one red cross shall be attached or applied in any way except as part of a label substantially as in defendant's *Exhibits D 3, D 4, D 6, D 7* and *D 12;* and likewise from selling and from offering to sell or otherwise disposing of any gauze not by or for complainant made in packages to which a representation of two red crosses shall be attached or applied. or to which a representation of one red cross shall be attached or applied in any way except as part of a label substantially as in defendant's *Exhibits D 3, D 4, D 6, D 7* and *D 12;* and likewise from using in connection with the sale of absorbent cotton the package or packages complained of in the bill of complaint heretofore by it the defendant used, or any other package or packages which shall so closely resemble the package of the complainant by it availed of in connection with the sale of its absorbent cotton and described in the bill of complaint as to be calcu-

lated to deceive; and from unlawfully imitating the complainant's absorbent cotton or gauze packages; and likewise restraining the defendant from using the designation "Red Cross" in connection with the manufacture or sale of absorbent cotton or gauze not by or for the complainant made; and from using a representation of a red cross in connection with said manufacture or sale except as a part of a label substantially as in defendant's *Exhibits D 3, D 4, D 6, D 7* and *D 12;* and from doing any act or thing whatsoever which may be calculated to cause the absorbent cotton or gauze of the defendant to be mistaken in the market for, or confused with, the absorbent cotton or gauze of the complainant or offered or sold as and for the complainant's absorbent cotton or gauze.

The decree should be reversed and a decree entered in accordance with this opinion.

GARRISON, J.

The complainant is not, in my opinion, entitled to enjoin the use of the red cross by the defendant.

With regard to the simulation by the defendant of the complainant's packages in other respects, I concur in the view of Mr. Justice Swayze.

I shall vote to reverse the decree in order that it may be modified in the manner above indicated.

I am authorized by Judges Bogert, Dill and Green to say that they concur in the above modification.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VROOM, GREEN, GRAY, DILL—13.