Blue Goose Auto Service, Incorporated, et al., appellants,

*v.*

Blue Goose Super Service Station, Incorporated, respondent.

[Submitted October 30th, 1931.   Decided May 16th, 1932.]

*Mr. Nicholas S. Schloeder,* for the appellants.

*Mr. Samuel Tartalsky,* for the respondent.

The opinion of the court was delivered by

Parker, J.

The bill prayed an injunction to restrain the use by defendant of the name "Blue Goose" in connection with the servicing of automobiles, such name being claimed as the

property and trade name of complainant corporation. There seems to have been an application for preliminary injunction before the same vice-chancellor, which was denied, and from that denial no appeal seems to have been taken. The cause came on for final hearing, and at that hearing, to judge from the transcript before us, the vice-chancellor, influenced perhaps by impressions formed at the earlier proceedings, made ruling after ruling, in many cases of his own motion, which paralyzed the efforts of complainants' counsel to bring out the facts, struck out question after question and answer after answer, in a great many cases erroneously, became unnecessarily incensed against a witness by the name of Smith; and because Smith was a little uncertain about his dates and testified that he had seen a certain advertisement in the *summer* of 1929 whereas his affidavit used on the application for an injunction said it was the spring of 1929, the vice-chancellor branded him, after several pages of heckling, as a perjurer and in contempt of the court and ordered him committed to the county jail for thirty days. Shortly afterwards, he cut this down to two weeks so that Mr. Smith might spend Christmas with his family; and still later he changed the punishment to a fine of $50. At the conclusion of such testimony as he permitted to be given, he decided the case in an oral deliverance, taking up fourteen printed pages of the book, in favor of the defendant, on the following grounds: (1) misjoinder of parties complainant; (2) that the complainant or complainants·had no exclusive right to the word "super" in connection with their business; (3) that defendant had incorporated using the name "Blue Goose," but complainant had not done so, nor registered under the "Names act" (meaning perhaps *P. L. 1906 p. 513; Comp. Stat. p. 3686*); (4) that Smith was guilty of perjury; (5) that, as he had himself already decided in the same cause, complainants were in laches; (6) that defendant's place was too far away (twenty-three to twenty-five miles) from complainant's to do any damage; and (7) that complainant had permitted the use of the name "Blue Goose" by other service stations without objection.

The conduct of the case by the vice-chancellor justifies a repetition of the remarks of the late Mr. Justice Katzenbach in the case of *Babirecki* v. *Virgil, 97 N. J. Eq. 315* (at *p. 321*), where he says, among other things: "It may be that the vice-chancellor had, prior to the attempted cross-examination, become satisfied that the complainants' suit was without merit, and that nothing which could be brought out upon cross-examination would alter the view which he entertained. This, however, furnished no basis for a refusal to allow the questions asked to be answered. * * * A litigant has the right to have brought out all the facts which have a bearing upon his case. A trial judge must at all times be patient. The door to any legitimate subject of inquiry must not be closed."

With this preamble we come to the case itself, which is one of infringement of a trade name, or unfair competition, and involves the propriety of the defendant using the name "Blue Goose" in connection with an auto service station conducted by it in Englewood. The vice-chancellor lays stress on the words "super service" as connected with the complainants' claim, but we make little or nothing of that, and should not be inclined to say that there is anything about the phrase "super service" which one party can appropriate to his exclusive use; the phrase is too common for that, but "Blue Goose" is a different matter. The question now is with reference to the name "Blue Goose" as applied to an auto service station.

The history of the case seems to begin at some time in 1925, in which year complainant Levin started a service station at Kerrigan avenue, Union City. This has an "auto laundry" as a portion of its equipment. In 1926 the complainant sold out all but the auto laundry and continued to operate that until 1928 with the sign "Blue Goose" on it, in which latter year he sold it to one Ferrier who continued it as a "Blue Goose Auto Laundry" for six months when it was dismantled. In August, 1927, the complainant opened the Newark establishment on Frelinghuysen avenue, which is the basis of the bill, and has continued to conduct it from thence

hitherto. It has a large "Blue Goose" sign on it in a prominent situation and the testimony of Smith indicates that at least one customer (*i. e.*, himself) was in the habit of adjusting his movements about the State of New Jersey in such wise as to pull up at the Blue Goose station on Frelinghuysen avenue at times convenient and appropriate for obtaining service such as brake testing, and so on, at regular intervals.

In February, 1929, the complainants started a Blue Goose station in Bergenfield. This was sold to the Tidewater Oil Company, about November 18th, 1929, and consequently the Bergenfield station drops out of the picture, as the name disappeared at the time of the sale.

On May 1st, 1929, the defendants started their Englewood place. They had it under construction for several months and the complainants were aware of the fact that they were going to start in business and that they expected to use the name "Blue Goose."

One other place is mentioned in the evidence but needs no particular consideration. This is the Hackensack place which was opened by the two brothers of the complainant Levin. According to the testimony, it was started after the filing of the bill, and complainant has a substantial interest in it.

Returning to the defendant's Englewood place, it had been under construction several months before May 1st, 1929, when it started to do business. Levin knew about it in February and went to a lawyer named Beers who apparently did nothing. Then he dropped Beers and went to another lawyer named Eichmann who was called as a witness. Eichmann did not get very far with it either. He wrote a letter May 2d, 1929, to the defendant corporation threatening suit to restrain the name "Blue Goose" and under date of May 7th, 1929, the defendant's counsel answered stating that they had endeavored to find Mr. Eichmann on the telephone and asking him to communicate. Eichmann said that it took several weeks for them to get in touch with each other and then they endeavored to negotiate a settlement. In short, there was considerable talk with no result.

Later, at some time not definitely stated, the matter was

turned over to the present counsel, who made application for a preliminary injunction on December 5th, and injunction was refused.

Notwithstanding the manner in which complainant's counsel was hamstrung in the presentation of his case, there is enough in the evidence and the record to justify us in saying that a case of infringement of trade name, or unfair competition, was fairly proved, and that an injunction should go as prayed in the bill.

1. Misjoinder does not stand in the way. Parties may be dropped or joined at any time, on or without application. Chancery rule 12.

2. Complainant corporation had taken the "fancy" name "Blue Goose" in 1925 and even at common law had acquired an exclusive right thereto. *38 Cyc. 718; Eureka Fire Hose Co.* v. *Eureka Rubber Manufacturing Co., 69 N. J. Eq. 159; affirmed, 71 N. J. Eq. 300.* See *United Cigar Stores Co.* v. *United Confectioners, 92 N. J. Eq. 449.*

3. Whether complainant had registered the name, or incorporated under it, was immaterial although as we have said, the corporation complainant had officially adopted it. But mere user will generally suffice: it appearing, as in this case, that a good will had been established in connection with the name. *Eureka Fire Hose Co.* v. *Eureka Rubber Manufacturing Co., supra.*

4. If Smith was guilty of perjury as held by the vice-chancellor (of which there is grave doubt, to say the least), there still remains enough in the case to show complainant entitled to equitable relief.

5. The refusal of relief on the ground of laches is untenable. It is generally settled that laches will not bar relief against future infringement and unfair competition, though it may bar an accounting of past profits. *38 Cyc. 881.* If our own cases do not expressly lay down this rule, it is still implicit in several important decisions. *International Silver Co.* v. *Wm. H. Rogers Corp., 67 N. J. Eq. 646; S. C., 66 N. J. Eq. 119, 140* (where accounting was refused); *Johnson & Johnson* v. *Seabury & Johnson, 71 N. J. Eq. 750.* In *Munn*

& Co. v. *Americana Co., 82 N. J. Eq. 63* (at *pp. 77, 78*), delay of six months was held not a bar and injunction was awarded. On appeal, *83 N. J. Eq. 309,* we reversed in part on the unclean hands theory, but otherwise maintained the injunction.

Finally, the vice-chancellor held that the competition of Englewood with the Newark concern was no competition at all on account of the distance. To this we cannot agree. It is very plain from Smith's testimony, which is credible enough on this point, that the operator of an automobile who is using it in his business, driving over considerable distances, may well form the habit of resorting to a service station even at some distance from his home, where in his experience he has had good service and expects it to continue. This may fairly be held as a matter of common knowledge; and the situation of the complainants' service station, on the main highway between Newark and Elizabeth, makes it peculiarly available to the class of drivers represented by Smith.

As to the "laundry" and the Hackensack station mentioned above, constituting any estoppel on the exclusive right of complainants, the former had long since been dismantled and ceased operation, and the latter was obviously operating under the license and part ownership of complainant Levin who is also principal owner of the complainant corporation. The right to license was recognized in the *Munn Case, supra,* in that case injunction was denied to the extent of fraud on the public and as between the parties to that fraud; in this case no such fraud appears, and the defendant is an interloper.

The decree of dismissal will be reversed with directions to award an injunction pursuant to the prayer of the bill.

DONGES, J. (Concurring.)

I vote to reverse on the ground that the vice-chancellor excluded evidence which the complainants were entitled to have admitted, and which, if admitted, might have exhibited a factual situation calling for relief in accordance with the prayer of the bill of complaint.

Mr. Justice Campbell authorizes me to say that he concurs in the view expressed herein.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ. 14.