Complainant and its predecessors have been engaged in the manufacture and sale of shoes since 1874. The bulk of their product is a shoe known by the trade-name of "Walk-Over," which product by that name complainant, through advertisement, has caused to be known nationally and also protected by registration, although mere user will generally suffice if it appears as in this case that a good will has been established in connection with the name.
Over the years complainant also built up a net-work of distributors for the sale of the "Walk-Over" shoe in various cities in the United States, the defendant being one of such distributors in the City of Elizabeth.
This action is brought by complainant to restrain the defendant from using the name "Walk-Over" in his business of selling shoes at retail.
The defendant in 1921 called on complainant at its place of business in Brockton, Massachusetts, in order to arrange for the sale of the "Walk-Over" shoe with the result that complainant appointed the defendant (and his then partner) as exclusive distributors for the sale of the "Walk-Over" shoe in the City of Elizabeth. The arrangement was oral and included an undertaking by complainant to handle orders from the defendant for this particular shoe, terms of credit, coverage of the defendant under "floater" insurance and assistance in the way of advertising.
The defendant opened his store in Elizabeth and proceeded by signs, newspaper advertising and telephone listings to designate his place of business as "Walk-Over Shoe Store."
The defendant furnished complainant with financial statements from time to time and complainant supplied him with the "Walk-Over" shoe on credit until the year 1939 when it appears from the uncontradicted evidence that the defendant had furnished financial statements for the years 1935 to 1938, inclusive, which statements were false, which fact of falsification complainant did not discover until the year 1939, after which complainant refused to further supply defendant with shoes for cash or credit. *Page 184 
Concerning the falsity of the statements rendered by him the defendant in a letter dated April 5th, 1939, to complainant says "My back was against the wall and I had to fight. * * * I had to decide whether to show a correct statement and thereby incur the possibility of your discontinuing because the business then could not have shown a favorable balance. As I see it now, my decision was injudicious * * *." In closing the letter the defendant asked for another chance. In a letter dated June 9th, 1939, the defendant wrote complainant, "Because we will require additional time in which to dispose of these shoes [`Walk-Over'], we desire the use of our signs for the next few months, but assure you that the signs will be removed no later than September 1st." In that letter the defendant also says that he would appreciate it if some credit was given to him for the signs. However, the "Walk-Over" shoe signs have not been removed from the defendant's place of business.
In this suit he justifies his refusal to remove the signs upon the ground that the name "Walk-Over Shoe Store" has become known in and around Elizabeth and vicinity as signifying his store and business and that the complainant by this action seeks to appropriate his good will and to destroy his business; that he continued to operate his store under the name "Walk-Over" from 1939 down to the present with the full knowledge, acquiescence and consent of the complainant; that the signs erected by him are not of the type generally furnished by the complainant to its dealers, but are of defendant's own distinctive type and his own property; that his offer to remove the signs was without consideration and was based upon the assumption that the complainant would bear the cost of the removal, as well as compensate him for other expenses which he might incur in connection with the transition from a "Walk-Over" shoe store to one of another name; that the complainant is without "clean hands" in that it encouraged and directed him, as well as other dealers, to advertise as "Walk-Over" stores and to conceal from the public the fact that other shoes sold by them were not in fact "Walk-Over" shoes; that this was attempted to be accomplished by directing its stores to paste certain labels of the *Page 185 
same color as regular "Walk-Over" boxes over the ends of boxes of other shoe companies, and so he prays the court to deny complainant injunctive relief.
The proof is that complainant furnished such labels to the defendant and all stores selling "Walk-Over" products, not for the purpose of deceiving the public but at the request of "Walk-Over" dealers for the purpose of establishing uniformity of color and arrangement among shoe boxes of all brands of shoes sold in "Walk-Over" stores and for the protection of "Walk-Over" products as well as the public; that the labels referred to contained the legend "Special Line — not made by Geo. E. Keith Company." The use of these labels, the proof shows, was further intended to prohibit the practice which dealers had engaged in of displaying shoes other than "Walk-Over" in "Walk-Over" cartons, and dealers were especially instructed to advise customers that the special line shoes were not "Walk-Over" products.
The complainant prays that the defendant be enjoined from using the name "Walk-Over" in signs, advertising his business, his store and the products sold by him, and from carrying on business under the name "Walk-Over," and from representing in any way that he is authorized to sell the complainant's product. It does not seek accounting nor a decree for gains or profits but injunction against infringement of its trade-name only.
The jurisdiction of courts of equity to prevent injury from infringement of trade-names has been liberally exercised and applied in all circumstances whenever it appeared that the name was an established, distinctive and valuable adjunct to an undertaking, whether used to distinguish manufactured articles, a place of business, or a corporation, commercial, or one formed not for pecuniary gain. All that is required to bring into activity the injunctive powers of the court, is to inform it that the complainant's trade is in danger of harm from the use of its name, by the defendant, in such a way as is calculated to deceive the public into the belief that the defendant's affairs, in the respect complained of are those of the complainant. Cape MayYacht Club v. Cape May Yacht and Country Club, 81 N.J. Eq. 454;86 Atl. Rep. *Page 186 972; National Biscuit Co. v. Pacific Coast Biscuit Co.,83 N.J. Eq. 369; 91 Atl. Rep. 126; A. Hollander Son, Inc., v.Jos. Hollander, Inc., 117 N.J. Eq. 306; 175 Atl. Rep. 628;affirmed, 118 N.J. Eq. 262; 178 Atl. Rep. 786.
The defendant urges by way of defense the acquiescence of complainant and also laches. Neither acquiescence nor laches is in the instant case a bar to injunctive relief, although such defense would bar the right of accounting for profits earned by the defendant during the period of such acquiescence or laches if such accounting for profits were sought. Blue Goose Auto, c., v. Blue Goose Super, c., 110 N.J. Eq. 547, 551;160 Atl. Rep. 316; A. Hollander Son, Inc., v. Jos. Hollander, Inc., supra.
The defendant is no longer the distributor of the "Walk-Over" shoe manufactured by the complainant. The business relation between complainant and defendant was ended because of the false financial statements which defendant rendered to the complainant. To permit defendant to do business as "Walk-Over Shoe Store," or to display "Walk-Over" signs would be to harm complainant's trade and to deceive the buying public.
Injunction in accordance with the prayer of the bill will be granted.