Complainant moves on notice to strike portions of paragraphs 9 and 13 of the defendants' answer and the whole of paragraphs 15 to 18 (both inclusive) of that answer. The motion is rested on the grounds that the matter so challenged is frivolous and is not defensive to complainant's bill.
The bill seeks to enjoin the defendants from violating a certain restrictive covenant contained in a written agreement made on September 10th, 1940, wherein the defendants, Israel Fishman, Louis Fishman, Theodore Fishman, Jack Fishman (also known as Jacob Fishman) and Irving Lewitter, together with one Louis Rose (the latter not a defendant herein) covenanted that for a period commencing with the date of the agreement and ending November 30th, 1948, they would not, nor would any of them, in certain designated counties within the State of New Jersey and in the Borough of Richmond, Staten Island, in the State of New York, for his own account or for the account of others, or as employee, agent or servant of any person, firm or corporation, either directly or indirectly, "engage in any form of the grocery business similar to or substantially like the form of grocery business (exclusive of the dairy products business) now conducted by the Uco Food Corporation (the covenantee)." The same agreement contains a like covenant on the part of Samuel W. Rice and Maurice E. Rice, the principal stockholders of the Uco Food Corporation, which covenant is, however, limited to "the dairy products business similar to or substantially like *Page 170 
the business now conducted by the dairy products department of the Uco Food Corporation." The agreement also contains a substantially similar covenant on the part of the Uco Food Corporation, limited to the same dairy business as that business was then conducted by the Uco. The bill charges that the agreement containing these reciprocal covenants was incidental to a severance of the business relations theretofore existing between the Fishmans and the Rices, such relations arising out of the fact that each group owned stock in the complainant corporation, that the Fishman group sold out its stockholdings to the Rices, and that in connection with that sale the Fishmans took over the dairy business department, as theretofore conducted by the complainant company, and that company retained for itself the grocery business, as theretofore conducted by it. The reciprocal covenants were intended to protect the integrity of the business so taken over by each group. It is now charged that the covenantors, through the instrumentality of the corporate defendant. Gude Cole, Inc., whose capital stock they own and of which company the individual defendants are officers and directors, have been selling certain specified foodstuffs and food products of a kind encompassed by and included in the grocery business as conducted by the complainant on the date of the covenant and that therefore the defendants are engaged in the grocery business similar to and substantially like the grocery business conducted by the complainant at the time the covenant was made. It is claimed that this business activity offends the covenant and is being carried on in all the prohibited areas delineated in the covenant. The bill seeks not alone a restraint but also an accounting of profits made during the period that the covenant has been violated.
Paragraph 9 of the bill specifies thirteen items or commodities which, complainant charges, are being sold by the defendants in violation of the covenant. Paragraph 9 of the answer admits that the defendants deal in and sell all of the articles so enumerated, with the exception of paper boxes, and the defendants say that all such articles "were, on September 10th, 1940, and now are, commonly and customarily sold in the conduct of a dairy products business, and are such *Page 171 
as they may rightfully sell in pursuance of the agreement of September 10th, 1940." Again, in paragraph 13 of the answer the defendants say that "the products which they have sold, and now sell, are such as have been, and now are, commonly and customarily sold in the conduct of a dairy products business." Complainant moves to strike those portions of paragraphs 9 and 13 of the answer. This motion should be granted. It is not disputed in the case that the complainant company, at the time the reciprocal covenants were made, conducted two businesses, that of selling groceries and that of selling dairy products. Paragraph 2 of the agreement refers to the dairy business as "the dairy products department." By their respective covenants the parties defined the businesses sought to be protected. The grocery business, which the defendants agreed not to invade in the stated areas, was "any form of the grocery business similar to or substantially like the form of grocery business * * * now
conducted by the Uco Food Corporation." (Italics mine.) It matters not what other concerns engaged in the grocery business sell as a part of that business. The test that the parties adopted was the character of complainant's grocery business at that time. The language of the covenant seems carefully studied to protect the integrity of the complainant's grocery business, whatever the same consisted of at the time the covenant was given, and if, in fact, the commodities now being sold by the defendants were a part of complainant's grocery business at the time of the making of the covenant, the defendants are not excused by the circumstance, if it be a fact, that such commodities are commonly and customarily sold in the conduct of a dairy products business. By reason of the particularly precise language of the reciprocal covenants contained in the agreement, it is wholly irrelevant in this case what are the common practices either in the grocery business or in the dairy products business. The dispute must be settled by the nature of these two businesses as conducted by the complainant company at the time the segregation of the two businesses was accomplished and the reciprocal covenants were exchanged. Nor is the situation altered by the claim that by an exception expressed in their covenant the *Page 172 
defendants were left free to engage in the dairy business, and by the further claim that the commodities objected to are commonly sold in the dairy business. Here, too, the test is not what is commonly sold in a dairy business but what were the commodities sold in the dairy business as operated by the complainant on the date the covenants were exchanged. It will be noted that the covenant of the individual defendants excepts from its operation the dairy business mentioned in the other covenant. An examination of the reciprocal covenants in their context shows that they were intended to be mutually exclusive. The defendants' argument, if accepted, would have the effect of nullifying both covenants and leave the parties free to compete with each other. That was not the intention of the parties. The challenged portions of paragraphs 9 and 13 of the answer will be stricken.
Paragraph 15 of the answer alleges that complainant, until recently, made no objection to the defendants' manner of business and acquiesced in and "consented" to such business. The defendants claim, that thereby, complainant waived and relinquished its right to complain of the defendants' conduct. There would be no difficulty with this defense if it were confined to complainant's failure to object and to mere acquiescence. In that situation the propriety of the defense would be determined in the same way as I later determine the defenses presented by paragraphs 16 and 17 of the answer. The difficulty I find with the defense in the fifteenth paragraph is that it alleges a consent by the complainant to the defendants' business conduct without revealing whether such consent was upon consideration and in form binding upon the complainant. In view of the silence of that defense on this point, it will not now be struck but the motion addressed to it will be held over to await the proofs at final hearing.
Paragraph 16 of the answer pleads an estoppel springing from alleged failure on the part of complainant to object to the defendants' business and from its alleged acquiescence therein. Paragraph 17 of the answer presents the claim of laches, based upon alleged delay in complainant's filing its bill. These two defenses setting up laches and acquiescence, as well as that of waiver presented by the fifteenth paragraph *Page 173 
of the answer, are no defense to the injunctive relief sought by complainant against future or continued breach of the covenant but may bar the right to past profits earned prior to the filing of the bill of complaint. Blue Goose Auto, c., v. Blue GooseSuper, c. (Court of Errors and Appeals), 110 N.J. Eq. 547;160 Atl. Rep. 316; International Silver Co. v. Wm. H. RogersCorp., 67 N.J. Eq. 646; 60 Atl. Rep. 187; Johnson Johnson v.Seabury Johnson, 71 N.J. Eq. 750; 67 Atl. Rep. 36; Munn Co.
v. Americana Co., 82 N.J. Eq. 63; 88 Atl. Rep. 330 (reversed on other grounds in 83 N.J. Eq. 309; 91 Atl. Rep. 87); A.Hollander Son, Inc., v. Jos. Hollander, Inc., 117 N.J. Eq. 306;175 Atl. Rep. 628 (affirmed with restraint modified,118 N.J. Eq. 262; 178 Atl. Rep. 786); McLean v. Fleming,96 U.S. 245; 24 L.Ed. 828; Consolidated Fruit Jar Co. v. Thomas, 6 Fed.Cases 341; Menendez v. Holt, 128 U.S. 514; 82 L.Ed. 526; AuntJemima Mills Co. v. Rigney Co., 247 Fed. Rep. 407. Although these cases deal in the main with invasion of patent and trade name rights, the principle laid down by them is applicable to every species of unfair competition. Then, too, the instant case seeks the protection of a strict legal right, arising excontractu, and the complainant is entitled to relief if the legal right be established. "* * * mere delay and acquiescence will not, therefore, defeat the remedy unless it has continued so long as to defeat the right itself." Pom. Eq. Jur. (4th ed.), § 1445. Inasmuch as the complainant, by its bill, has asked for an accounting for past profits, the defenses presented in paragraphs 16 and 17 will be held over until final hearing. If in the interim or at final hearing complainant will withdraw its claim to an accounting for profits earned prior to the filing of the bill and confine its demand to the profits earned since, then those defenses will be stricken.
The eighteenth paragraph of the answer alleges that the covenant sought to be protected by complainant's bill was the joint obligation and agreement of the individual defendants and one Louis Rose, and that prior to the filing of the bill complainant agreed that Louis Rose might carry on a business in violation of the terms of the covenant and "has *Page 174 
released and discharged him from said obligation and agreement." The defendants claim that by reason of that conduct the individual defendants are released and discharged from their covenant. It would appear that the covenant in question is a severable one, where the release of one covenantor will not discharge the others. However, it is not necessary to decide that question at this time. The answer charges an agreement between the complainant company and Louis Rose but does not indicate whether that agreement was upon consideration or was merely gratuitous and capable of withdrawal. Nor does the answer indicate whether the alleged agreement of release was under seal. In the absence of such pertinent information, paragraph 18 will not be struck but the motion addressed to it will be laid over to final hearing to await the proofs.
An order in accordance with these conclusions will be advised.