Clifford Segal prays an injunction to restrain Mr. and Mrs. Storch from trading under the name Anna Lee Hosiery Shop.
In 1939, complainant and Anna Lee Hosiery, Inc., were jointly operating a number of retail stores called Anna Lee *Page 79 
Hosiery Shops. Mrs. Storch, who had been one of their employees and who, with her husband, was on friendly terms with Segal, decided to open a store of her own in Passaic. Segal encouraged her to do so and suggested that she operate as if hers were an Anna Lee Store. Mrs. Storch began business and has continued to the present time selling stockings and other articles of women's clothing in Passaic, calling her store the Anna Lee Hosiery Shop.
A year later, Segal and the corporation with which he was associated, decided to close all their stores, one at No. 671 Broad Street, Newark, another on Market Street, Newark, and a third in Brooklyn. Segal tried to find someone who would buy the trade name but was unsuccessful until he got in touch with Mr. and Mrs. Storch. Brief negotiations resulted in their buying the right to use the name Anna Lee Hosiery Shop at No. 671 Broad Street. The agreement was put in the form of a memorandum signed by the Storches, setting forth:
"In consideration of the use of the name and good will of Anna Lee Hosiery at the store premises, 671 Broad Street, Newark, N.J., the undersigned, William and Ann Storch, herewith agree to pay to Clifford Segal the following amounts: The sum of $200.00 on December 31, 1940; And the sum of $200.00 per year for the next four years, on December 31st of each year, so as to make the total amount paid for the use and good will of the name of Anna Lee or Anna Lee Hosiery at the afore-mentioned store premises $1000.00. The undersigned understand and agree that the name Anna Lee may not be used by them elsewhere than in the store premises at 671 Broad Street, Newark, N.J. (except in Passaic, N.J.) without written consent from Clifford Segal."
While there is a conflict of evidence, I am convinced that the memorandum embodies the agreement. See especially Segal's letter of November 3d 1944, and Blau's testimony. The Storches bought some stock in trade from Segal, and took possession of their new store February 19th, 1940. At about the same time, Segal closed his Market Street and Brooklyn stores and removed the stock to a warehouse. Ill health was what compelled Segal to retire and he has still no expectation of resuming business. Even after Segal had closed his stores, he hoped someone, in addition to defendants, *Page 80 
would pay him something for the name Anna Lee; but this hope expired by the end of 1940. When he wrote the two letters from which I will now quote, he was no longer interested in having defendants confine their use of the trade name to the two stores. On January 6th, 1941, Segal wrote congratulating the Storches on the good business they had done in 1940 and concluded by expressing his hope "to be able to see you some day climbing up into a real chain." He meant by the last phrase, the operation of a considerable number of Anna Lee stores. In an undated letter written about April of the same year, having in mind newspaper reports that a new store building would be built two blocks from No. 671 Broad Street, he counselled, "If you can get the store in the new Broad Street building for around $600 a month, I would suggest taking a chance. * * * If you do get it, I'd close up the 671 Broad Street and just have the one store." Late in 1945, the Storches opened a second store in Newark and one in Hackensack, and now operate four stores. Meanwhile, in the fall of 1944, Segal tried to get them to pay him a considerable sum in addition to the agreed $1,000. They refused.
Complainant argues that his acquiescence in the use of the trade name, both in Passaic and in Newark, was a mere license which, in the absence of a stipulation to the contrary, is revocable at the pleasure of the licensor. I would not so state the rule applicable to a license. When one person licenses or gives or sells another the right to trade under a particular name and there is ambiguity in the contract, the circumstances of the case determine the extent of the right bestowed. Thus, in Geo.E. Keith Co. v. Greenberg, 134 N.J. Eq. 182, where a shoe manufacturer appointed defendant distributor of "Walk Over" shoes in Elizabeth, the right of the latter to do business as the Walk Over Shoe Store ended when he stopped handling the complainant's shoes. But in the case before me, there is nothing indicating an intention by the parties that Segal might, if and when he chose, put a stop to defendant's use of the trade name. The payment of a substantial consideration in one instance, points definitely the other way. So does the nature of the transaction *Page 81 
as a whole. Segal consented that the Storches get whatever benefit they could from the good will attached to the name Anna Lee, the reputation for merchandise of good quality, reasonable prices, and courteous service, and the customers' habit by dealing with an Anna Lee Store. That good will, built up by Segal, was probably an important element in the early years of defendants' operations. But it is equally probable that that good will has been consumed. With the passage of years after Segal retired, the good will attached to the name Anna Lee has become more and more the result of the manner in which the Storches have carried on the business, rather than that in which Segal had conducted it. It cannot be supposed that any considerable amount of the present trade results from the memory of customers that prior to 1939 or 1940 their dealings with Anna Lee Stores were satisfactory. This is the natural outcome of the arrangement between the parties. Were defendants now compelled to abandon their trade name, they would not merely surrender the good will that Segal created; they would forfeit the fruits of their own labor. The parties cannot have intended this to come to pass. From the entire situation, the inference is to be drawn that the right given defendants is perpetual.
But the title which defendants took from Segal was limited to Passaic and No. 671 Broad Street, Newark. May he have an injunction against their using the name Anna Lee at their other two stores? Such an injunction could go only on the theory that they are invading some right of his, namely, his own property in the name. It is the general rule that a trade name is merely an element in the good will of a business; that it cannot exist as a right in gross or as property disconnected from a business in which it is used. In the earlier cases, relief was granted only where there was competition between the parties and the trade of the rightful owner of the name was being diverted to the wrongdoer. And this is still the common case, although latterly, in the absence of competition, injunctions have issued where the conduct of the defendant has been such as to injure or threaten injury to plaintiff in his business by causing the public to believe that *Page 82 
the plaintiff is the sponsor of, or in some way connected with, the defendant. National Grocery Co. v. National Stores Corp.,95 N.J. Eq. 588; 97 N.J. Eq. 360; Vogue Co. v. Thompson Co.,300 Fed. Rep. 509; Lady Esther, Ltd., v. Lady Esther CorsetShoppe (Ill.), 46 N.E. Rep. 2d 165; 148 A.L.R. 6, and extensive note (at p. 12). Following these principles, it is clear that the bill must be dismissed because Segal is not engaged in any business under the name Anna Lee, and is not at all injured by defendants' conduct. While an injunction might enable him to force defendants to pay him a substantial sum, such advantage would be no justification for the injunction. A trade name or trade-mark is not like a patent which can be put to a negative or merely prohibitive use. United Drug Co. v.Rectanus Co., 248 U.S. 90; 39 S.Ct. 48; Direct Service Oil Co.
v. Honzay (Minn.), 2 N.W. Rep. 2d 434; 148 A.L.R. 1.
See 3 Rest.-Torts, § 730.
Complainant cites Baltimore v. Clark, 131 N.J. Eq. 290;
affirmed, 132 N.J. Eq. 374, in which an injunction was granted, although complainant was not in business. But that was an exceptional case, not applicable to the present controversy. As pointed out by Judge Hand in Emerson Electric Manufacturing Co.
v. Emerson, c., Corp., 105 Fed. Rep. 2d 908, no single rule has been formulated that fits all the cases. "The conflicting interests must always been weighed."
Lastly, complainant deliberately abandoned any right he had to the name. One who abandons a trade name cannot successfully object to its use by another where the use is not apt to deceive the buying public to the injury of complainant. 3 Restat.-Torts,§ 752.
The bill will be dismissed. *Page 83