# THE INTERNATIONAL SILVER COMPANY

*v.*

## WILLIAM H. ROGERS CORPORATION et al.

[Filed April 21st, 1904.]

*Mr. Day* and *Mr. Bartlett,* for the complainant.

*Mr. Craig A. Marsh,* for the defendants.

STEVENS, V. C.

The final decree reserved the question whether the defendant corporation is liable to account. That question has since been argued, and I have come to the conclusion that no account should be ordered. It would seem that if ordered it would not be limited to the profits on sales, in the case of which it is shown that customers were actually deceived, but also to profits made on sales, at least to middlemen, of any goods which wear the simulated dress. *Lever* v. *Goodwin, 36 Ch. Div. 1; Fairbank Company* v. *Windsor, 118 Fed. Rep. 96.* The more severe the penalty, the greater the diligence complainant should

use in asserting its right. It should not be permitted to stand by, knowing that defendant is devoting its money and efforts to building up a business; wait until after he has made profits, and then come in and demand them as its own. A clear distinction is made in all the cases, English and American, between the right to an injunction and the right to profits. "Cases frequently arise," said Justice Clifford, in *McLean* v. *Fleming, 96 U. S. 245, 257,* "where a court of equity will refuse the prayer of the complainant for an account of gains and profits on the ground of delay in asserting his rights, even when the facts proved render it proper to grant an injunction to prevent future infringement." Among the cases which he cites are *Harrison* v. *Taylor, 11 Jur.* (*N. S.*) *408,* and *Beard* v. *Turner, 13 L. T.* (*N. S.*) *746.* In both an account was refused, although in the former there was a delay of only nine months, and in the latter a delay of only two years. Their authority seems to have been universally recognized.

The defendant Rogers began business in the summer of 1898. He continued to do business as an individual until May 1st, 1901, when he organized the William H. Rogers Corporation. Up to this time the complainant had not sued him. It had brought suit in Connecticut, in May, 1900, to restrain the Bristol Brass and Clock Company from manufacturing wares for Rogers, and it had, on February 1st, 1901, in the United States circuit court for the northern district of New York, obtained, by consent or default, an injunction against the Benedict Manufacturing Company to restrain that concern from acting as Rogers' selling agent. To neither of these suits, however, was Rogers made a party. Why he was not sued in New Jersey does not appear. The fact is he was not. Mr. Mills, the complainant's solicitor, says that he had prepared a bill against him "some little time after the end of the Benedict suit" (*i. e.,* February 1st, 1901). He did not file it because he learned that the Rogers corporation had been organized. He waited until June 7th, 1902, and then began the present suit. No notice was ever given to Rogers that the complainant intended to proceed against him or against his corporation. During the

period between May 1st, 1901, and June 7th, 1902, the defendant corporation expended a large sum of money in establishing a plant, and in building up a business which appears to have been fairly successful. The complainant is itself a New Jersey corporation, and it is admitted that it knew of the organization of the defendant corporation very shortly after it became incorporated. Its only excuse for not having proceeded sooner is that it was searching for evidence. But the fact is that it had no more evidence at the time it began or at the time of the trial, a year later, than it had in May or June, 1901. It was not able, after the lapse of two years, to show that a single customer, either at wholesale or retail, had actually been deceived; that is, had been buying the defendant's goods supposing them to be of the complainant's manufacture. Its case rested and was decided wholly on the likelihood that customers would or might be deceived because of the similarity of the name. Under these circumstances I think the complainant has been guilty of such laches as to disentitle it to an account. What Vice-Chancellor Wood said, in *Beard* v. *Turner,* applies here: "If you induce another to lay out money by keeping back a right which you intend at some future time to assert, you may induce him to incur serious expenditure. * * * But suppose you wish to profit by that act of which you say you have a right to complain, and shall at some future period complain of, then I apprehend that this court will say you must come here at once—for this reason, that you ask in the bill for an account of the profits made by this gentleman upon the sale of the goods."