The L. Martin Company, respondent,

*v.*

L. Martin and Wilckes Company, appellant.

[Argued December 1st, 1908. Decided March 1st, 1909.]

1. On a bill to enjoin unfair competition a court of equity, upon granting an injunction, may also decree an account of the profits made by the defendant by means of the unfair competition.

2. On a bill to enjoin unfair competition it is not permissible for a court of equity, upon granting an injunction, to decree that the defendant shall account for damages suffered by the complainant in addition to accounting for the profits made by the defendant.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevenson, whose opinion is reported *ante p. 39.*

*Mr. Robert H. McCarter* and *Mr. Charles L. Carrick,* for the respondent.

*Mr. Craig A. Marsh* and *Mr. Frank P. McDermott,* for the defendant.

The opinion of the court was delivered by

SWAYZE, J.

We agree with the conclusion reached by the vice-chancellor upon the facts of the case and have nothing to add to his convincing opinion in that respect. The decree, after adjudging that the defendant refrain from carrying on the lampblack business under the name of L. Martin and Wilckes Company, or any other name in which the name L. Martin appears, unless words are incorporated in and made a part of such corporate name, which shall clearly and unmistakably distinguish the corporate name so adopted by the defendant from the complainant's corporate name, proceeds to award an injunction forbidding the defendant from carrying on the lampblack business under the name of L. Martin and Wilckes Company or under any other name in which the name L. Martin appears. The terms of the injunction provided for are, therefore, broader than the restraint adjudged to the complainant, which permits the use of the name L. Martin if the corporate name of the defendant clearly and unmistakably distinguishes it from the complainant. The decree, however, rests upon the conclusion that the defendant adopted the name L. Martin as a part of their corporate name for the purpose of securing trade which properly belonged to the complainant. This brings the case within the rule of *International Silver Co.* v. *Rogers, 67 N. J. Eq. (1 Robb.) 646,* and we think the broad terms of the injunction were warranted. Since the complainant does not appeal from that part of the decree which adjudges a more limited restraint, we see no cause for reversal on this account.

The decree further orders a reference to a master to ascertain the profits diverted from the complainant, which have been made by the defendant from the sales of lampblack in packages, and such other damages, if any, as the complainant has suffered by reason of the wrongful conduct of the defendant that is enjoined by the decree. It is the portion of the decree which directs the

master to ascertain these damages that calls for comment. This goes beyond the prayer of the complainant's bill, which, in this respect, asks only for an account of sales and profits. The vice-chancellor ably argued in favor of the proposition that it would be unfortunate to remit the complainant to a court of law to ascertain its damages. We are not prepared to accede to his suggestion that we should so extend the jurisdiction of a court of equity, however desirable it may be that such extension should be brought about, either by legislation, or, if that is impossible, in view of our constitutional limitations, by constitutional amendment. The general rule is that unliquidated damages for a tort cannot be recovered in equity. So well settled was this rule in England that an act of parliament was required to change it. *21 & 22 Vict. c. 27.* This rule is stated in *2 Dan. (5th Am. ed.) 1080.* It is equally well settled in this state. *Trotter* v. *Heckscher, 40 N. J. Eq. (13 Stew.) 612; Alpaugh* v. *Wood, 45 N. J. Eq. (18 Stew.) 153; Norton* v. *Sinkhorn, 63 N. J. Eq. (18 Dick.) 313.*

There is a class of cases in which a court of equity will ascertain the amount of compensation, but these are cases where the ascertainment is necessary as a condition precedent to the equitable relief which the court of chancery is competent to afford. Illustrations are to be found in cases where equity requires that a landowner should be enjoined from maintaining ejectment against a corporation having the power to condemn lands, but at the same time requires that the injunction should be awarded upon terms that the corporation make compensation. The cases are collected by Vice-Chancellor Pitney in *Sparks Manufacturing Co.* v. *Newton, 57 N. J. Eq. (12 Dick.) 367* (at *p. 393*); *North Hudson Railroad Co.* v. *Booraem, 28 N. J. Eq. (1 Stew.) 450; New York and Greenwood Lake Railroad Co.* v. *Stanley's Heirs, 35 N. J. Eq. (8 Stew.) 283.* Other cases are cases of compensation on a bill for specific performance, of which *Melick* v. *Cross, 62 N. J. Eq. (17 Dick.) 545,* is an instance. Another illustration is *Simmons* v. *Paterson, 60 N. J. Eq. (15 Dick.) 385,* where the right to ascertain compensation was contingent upon the consent of the city. In *Eggers* v. *Anderson, 63 N. J. Eq. (18 Dick.) 264,* the jurisdiction of equity was sustained in

a case of fraud, and it was held that the value of goods furnished might be ascertained by a master, but that case comes short of sustaining the jurisdiction to ascertain unliquidated damages for a tort. The difficulty of applying that rule to the present case arises out of the fact that the rule for ascertaining the compensation of the complainant in equity in cases of this kind is not the damages suffered by the complainant, but the profits realized by the defendant. The proper rule in such cases is the rule which has been adopted in cases for infringement of patents. That rule allows the complainant to recover the profits made by the defendant, including in profits the advantage derived by the defendant from the use of the invention. *Tilghman* v. *Proctor, 125 U. S. 136,* where Mr. Justice Gray said: "The general rule has been sometimes said to be based upon the theory that the infringer is converted into a trustee for the owner of the patent, as regards the profits made by the use of his invention. But, as has been recently declared by this court, upon an elaborate review of the cases in this country and in England, it is more strictly accurate to say that a court of equity, which has acquired upon some equitable ground the jurisdiction of a suit for the infringement of a patent, will not send plaintiff to a court of law to recover damages, but will itself administer full relief by awarding, as an equivalent or substitute for legal damages, a compensation computed and measured by the same rule that courts of equity apply to the case of a trustee who has wrongfully used the trust property for his own advantage." Citing the case of *Root* v. *Railway Company, 105 U. S. 189.* The distinction between an account of profits made by the defendant and an ascertainment of the damages suffered by the complainant is well illustrated in the case of *Elizabeth* v. *The American Nicholson Pavement Co., 97 U. S. 126,* where the court held, in an opinion by Mr. Justice Bradley, that the city of Elizabeth, having made no profit, could not be held for compensation in the equity suit, although it had made itself liable for damages in an action at law. That case arose prior to the passage of the act of congress of July 8th, 1870 (*U. S. Rev. Stat.* § 4921), which authorized a court of equity, upon rendering a decree in a suit for infringement, to ascertain the damages which complainant

had sustained in addition to the profits to be accounted for by the defendant. In a recent case the supreme court of the United States has again been called upon to point out the distinction between the measure of the recovery in equity and that applicable in an action at law.

*Coupe* v. *Royer, 155 U. S. 565* (at *p. 582*). The ground upon which the complainant is allowed to recover the profits made by the defendant, or the value of the advantage derived by him from the use of the patent, is that the defendant should not be allowed to profit by his own wrong, since it often happens that the advantage to the defendant exceeds the damage suffered by the complainant. The principle which has been applied by the courts in suits for infringement of patent is equally applicable in bills to restrain unfair competition, and has been so applied by the courts.

*Lever* v. *Goodwin, L. R. 36 Ch. Div. 1,* which was followed in the later case of *Saxlehner* v. *Apollinaris Company (1897), 1 Ch. 893.* In *Singer Manufacturing Co.* v. *June Manufacturing Co., 163 U. S. 169,* upon the reversal of the decree, it was ordered that a decree be entered containing a direction for an accounting by the defendant as to any profits which might have been realized by it because of the wrongful acts by its committee. In *Ford* v. *Foster, L. R. 7 Ch. 611,* the decree was that an account be taken of the profits made by the defendants. *1 Seton Dec. 236.* In *Regis* v. *Jaynes, 77 N. E. Rep. 774,* the supreme judicial court of Massachusetts, in a trade-mark case, said that the same rule was applied to cases of unfair competition merely as well as to cases of the infringement of a trade-mark properly so called. A different rule was adopted in *Walter Baker Co.* v. *Slack, 130 Fed. Rep. 514,* and in *W. R. Lynn Shoe Co.* v. *Auburn Lynn Shoe Co.,* by the supreme judicial court of Maine, *62 Atl. Rep. 499.* In the case cited from *130 Fed. Rep.* the court was influenced by the fact that the profits made by the infringer would not in all cases be compensation to the injured, for the reason that his loss was in part due to a failure to acquire a just and deserved gain and to the injury to the reputation of his product by reason of the substitution of the spurious article. No doubt there may be such elements of damage quite

independent of any profits or advantage gained by the defendant, but the difficulty is that the two elements of damage may overlap. For example, the damages of the complainant would include profits which he has lost, but to award him not only those profits by way of damages, but also the profits which the defendant actually gained by the sales would permit of a double compensation. If the profits which the complainant might make on sales by himself were exactly the same as the profits actually made by the defendant, the compensation would be exactly double; it might even be more than double if the complainant, by reason of ability to sell or market his goods on more advantageous terms, could have realized a larger profit than was actually realized by the defendant. This in itself is a sufficient reason for the rule which has been adopted by the courts. No injustice is thereby done to the complainant. He has his option to sue at law for the damages, or to file his bill in equity for an injunction and account of profits. Whether he can in any case have both remedies is a question not now before us. The decree in this case directs the master to ascertain the profits diverted from the complainant which had been made by the defendant and such other damages, if any, as the complainant has suffered. It fails to take into account the fact that some of the damages may be due to the prospective profits of which the complainant has been deprived, and may be, to that extent, embraced also within the denomination of profits made by the defendant. This of itself would require a reversal of the decree in this respect. We think it is better to follow the rule of the English courts and of the United States supreme court and limit the accounting to the profits made by the defendant.

For these reasons the decree must be reversed, and as the complainant drew the decree in its present form, and in its answer to the petition of appeal asserts that it is agreeable to equity, we see no reason why the appellant, having been forced to come into this court, should not be entitled to the costs of the appeal. The record should be remitted to the court of chancery with instructions to enter a decree in accordance with this opinion. The complainant is, of course, entitled to costs in the court of chancery.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, GRAY, DILL—13.