PHILIP HILTON, complainant-respondent,

v.

JOSEPH HILTON, defendant-appellant.

[Argued March 10th, 1919.  Decided June 20th, 1919.]

1. When a defendant has been enjoined from using in the clothing business the name of "Hilton" alone or in such a way as to lead the public to believe that his goods are the complainant's goods, or his business is the complainant's business, the question whether he has violated that injunction is one of fact.  The test is whether the use by the defendant of the words in dispute is likely to deceive ordinary purchasers buying with such care as would usually be exercised in such transactions.  A nice discrimination is not expected from the ordinary purchaser.  Neither actual confusion nor actual fraudulent intent need be shown where the necessary and probable tendency of the defendant's conduct is to deceive the public and pass off his goods or business as and for that of the complainant.  Similarity, not necessarily identity, of name is recognized as a basis for relief.

2. Where the complainant Philip Hilton had purchased of the defendant, Joseph Hilton, the latter's interest in the business, name and goodwill of the clothing business of "The Hilton Company," built up by both, by large expenditures in advertising, and the defendant, after establishing competing stores, had been enjoined from using the name "Hilton" alone or in such a way as to lead the public to believe that his goods and business were those of the complainant, the defendant was rightly adjudged guilty of contempt, it appearing that his competing stores were near the stores of the complainant, which the latter had continued under the original name and advertised as such, and that the defendant had adopted as his trade name and for his signs the words "Jos. Hilton & Co." and this is so even though, at the time of adopting such name, the defendant anticipated the formation of a partnership with his two sons and one Tennenbaum which was in fact afterwards entered into.

On appeal from an order of the court of chancery advised by Vice-Chancellor Lane, whose opinion is reported in *89 N. J. Eq. 472.*

Mr. *Selick J. Mindes* and Mr. *Robert H. McCarter*, for the appellant.

*Mr. Waldron M. Ward* and *Mr. John R. Hardin,* for the respondent.

The opinion of the court was delivered by

TRENCHARD, J.

This is an appeal by the defendant from an order in an unfair trade case adjudging the defendant guilty of contempt for violation of the decree entered upon *remittitur* from this court, modifying in part, and affirming otherwise, the decree made upon the final hearing of the cause.

The complainant filed his bill November 18th, 1916, setting forth that, prior to June 24th, 1916, he and the defendant had been engaged as partners in the clothing business under the name of "The Hilton Company;" that they had built up a large business in the city of New York, Brooklyn and other cities not now requiring mention; that, in the course of the conduct of the business, the partnership had used the words "Hilton" and "Hilton's" alone and in combination with other words to designate and describe their merchandise, and as a trade name; that they had expended large sums in advertising the business under such trade names; that on June 24th, 1916, the defendant had conveyed all of his right, title and interest in the partnership to the complainant, including all his right, title and interest to the name and good-will of the business; that complainant thereafter continued to conduct such business under such trade names in the same localities; that the business continued to be of large volume, and that the same general methods of advertising were continued.

The bill also alleged that shortly before its filing defendant had begun a competitive clothing business in the city of New York and other localities, and was conducting such business under the trade name "Hilton's." The bill further averred confusion and prayed relief.

After hearing, Vice-Chancellor Lane in his conclusions, which are reported in *89 N. J. Eq. 149,* held that the use by the defendant of the trade name "Hilton's," in the manner it was used in connection with stores in close proximity to those of the com-

plainant, could not but lead to confusion. and tend to injure the complainant in his business, and he therefore enjoined the defendant.

An appeal was taken and this court in an opinion reported in *89 N. J. Eq. 182,* expressly and unqualifiedly held that "the evidence entitled the complainant to the relief prayed for," but not exactly that granted in the court of chancery, and, accordingly, on *remittitur,* a decree was entered in the court of chancery on July 18th, 1918, enjoining the defendant, Joseph Hilton, "from using the name 'Hilton's' or 'Hilton,' alone or in such manner as to lead or induce the public to believe that the goods manufactured or sold by him are manufactured or sold by complainant, and. that the business. conducted by defendant is the same as or a part of the business conducted by complainant, from using any emblem or device resembling the trade emblem of complainant in any way in his business and from conducting his business so as to deceive the public and induce it to believe that the goods manufactured or sold by defendant were manufactured or sold by complainant and that the business conducted by defendant is the same as or a part of the business conducted by complainant."

Following the service upon the defendant of this decree (according to the vice-chancellor), for a considerable time he conducted his business regardless of such decree (see opinion in first contempt proceedings, *89 N. J. Eq. 417*), but later added to the word "Hilton's" on his store signs the words "J. Hilton, Prop." Then the complainant, on August 23d, 1918, instituted the first contempt proceedings. After hearing, the vice-chancellor adjudged the defendant guilty, but purged him of the contempt upon payment of costs and counsel fees, in view of his discontinuance of such signs after the commencement of the proceedings. But since no appeal was taken in that proceeding, we are not concerned with that except as it may throw light upon the good faith of the defendant's conduct now in question.

The defendant then adopted as the style of his trade name the words now in dispute, "Jos. Hilton & Co." His newspaper advertising under this name began in the latter part of October, and his new signs were put up in the latter part of November.  .

The complainant filed his petition on December 23d, 1918, alleging the use of this name in the conduct of the defendant's business in New York City and elsewhere, and praying that the defendant be adjudged guilty of contempt, and after hearing he was adjudged guilty.

The issue made by the petition and answer (to which the scope of the hearing was strictly confined), and now presented on this appeal, is whether the use by the defendant of the words "Jos. Hilton & Co.," as the style under which he conducts his clothing business in competition with the complainant, leads or induces the public to believe that the goods manufactured or sold by him are manufactured or sold by complainant and that the business conducted by the defendant is the same as, or part of, the business conducted by the complainant.

We think that issue must be determined against the defendant. The rights of the parties were settled in general terms by the final decree. Thereby the defendant was restrained from using the name "Hilton" in such manner as to mislead the public. Whether or not he has done so is a question of fact. The test is whether the use by the defendant of the words in dispute is likely to deceive ordinary purchasers buying with such care as would usually be exercised in such transactions. *Wirtz v. Eagle Bottling Co., 50 N. J. Eq. 164; Johnson v. Seabury, 69 N. J. Eq. 696; National Biscuit Co. v. Pacific Coast Biscuit Co., 83 N. J. Eq. 369.* A nice discrimination is not expected from the ordinary purchaser. *International Silver Co. v. William H. Rogers Co., 67 N. J. Eq. 646.* Neither actual confusion nor actual fraudulent intent need be shown where the necessary and probable tendency of the defendant's conduct is to deceive the public and pass off his goods or business as and for that of the complainant. *International Silver Co. v. Wm. H. Rogers Corporation, 66 N. J. Eq. 140; Wirtz v. Eagle Bottling Co., supra; Rubber and Celluloid Harness Trimming Co. v. Rubber-bound Brush Co., 81 N. J. Eq. 419; National Biscuit Co. v. Pacific Coast Biscuit Co., supra.* Similarity, not necessarily identity, of names is recognized as a basis for relief. *International Silver Co. v. William H. Rogers Corporation, 66 N. J. Eq. 119; 67 N. J. Eq. 646.*

With these principles in mind we turn now to the facts to which they must be applied.

It appeared that the business of the complainant, in which the defendant was formerly a partner, had been conducted for many years under the name "The Hilton Company;" that it was common practice in the advertising and other trade uses of the name to abbreviate the word "Company" to "Co.," and that this alternate usage was continued by the complainant to the present time, by extensive advertisements by signs, in newspapers and in "tube" trains running into New York City to points near which the stores of the complainant and the competing stores of the defendant are located. It also appeared that the stores opened by the defendant were near those of the complainant and necessarily in sharp competition therewith, and so continue to the present time.

Eliminating entirely the abundant proof of actual cases of confusion in this case (the admissibility of which is disputed), and considering all of the facts and bearing in mind the whole course of the controversy, and the precedent wrongful use of the name (see *International Silver Co.*, v. *Rogers; 72 N. J. Eq. 937*), there was ample and persuasive proof before the court of the likelihood of confusion. This proof is found in the testimony (read in the light of common knowledge), and in the inferences properly deducible from the testimony, relating to the conditions of competitive trading in the retail clothing business, to the respective methods employed by the parties in placing themselves before the public, to the respective locations of their stores, particularly in association with the "tube" advertising of the complainant, to the likeness of the store signs of the parties in the impression made upon the eye of the casual and ordinary observer, to the absence of effectiveness of the abbreviation "Jos." in conveying to the mind of the public that the defendant was not the original Hilton, and to the similitude of the names respectively employed by the parties.

It will be observed that the defendant, in the trade name which he has adopted, has retained the name "Hilton," the most prominent name in complainant's trade name. He has substituted for the word "The" the diminutive "Jos." He has sub-

stituted for "Company" written out the word "Co.," and has put between "Hilton" and "Co." the symbol "&." He is not attempting to use his own name "Joseph Hilton" alone. What he is doing is using a trade designation which contains a part of his own name in conjunction with another word, also a part of the complainant's designation. This has the appearance of a studied attempt to adopt a trade name as nearly like that of the complainant as possible without being identical. It is probable that there is no distinction in the public mind between the word "Company" written out and "Co." The defendant's contention that he adopted the diminutive "Jos." because he was so known to the trade is not supported by convincing proof. It is undisputed that when he adopted the trade name of "Jos. Hilton & Co." he was in business alone. He says that the reason he adopted it was that he "anticipated" taking in his two sons and one Max Tennenbaum as partners. It appeared at the hearing that in fact this partnership was formed December 26th, 1918, three days after the petition was filed. But the fact that he "anticipated" taking in partners did not justify him in adopting the trade name of "Jos. Hilton & Co.," which, we think, in the circumstances of this case, was a violation of the decree of this court. If, as he says, at the time of adopting his trade name he contemplated partnership with his two sons and Max Tennenbaum, it would have been a simple matter for him to adopt a name which would indicate a desire to keep well away from the dividing line between violation of, and compliance with, the injunction. This he did not see fit to do, although one can readily think of several combinations of the names of the defendant and his prospective partners which could have been adopted and which would not at all meet with the disapprobation of the court.

The order under review will be affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—11.

*For reversal*—None.