The complainants have conducted and maintained a taxicab business in Atlantic City for approximately thirteen years. Originally they were incorporated under the name of "Edwards Taxicab Company" in September, 1915. The *Page 393 
name of the corporation was from time to time changed (by the filing of certificates, c.) until on the 17th day of October, 1922, it became "Yellow Cab Company of Atlantic City."
The complainant has secured in Atlantic City an established business and a valuable business reputation and patronage in its operation of what is commonly known as "Yellow Cabs."
The company had, at the time of the hearing, about one hundred and twenty cabs painted "yellow," and with certain distinguishing marks thereon, as well as the words "Yellow Cab Company" painted upon each door. There was also a number upon the cowl, and telephone numbers upon the back of the body. It also has a large number of "stands" about the city. These stands are exclusive, by reason of renting of spaces therefor, at the Pennsylvania railroad main station and electric station, and at the Reading railroad station, and also at several of the larger hotels and in eight or ten other points in different parts of the city. These stands were connected by independent trunk lines for telephone service.
The result has been that the company has built up an extensive and increasing business and patronage in the use of yellow taxicabs, and the style of its name has become a trade symbol of great importance and value to it.
From time to time there have been imitations of the complainant's cabs and injunction proceedings have been heretofore instituted and preliminary injunctions granted.
The complainant was first in the local field in establishing and maintaining the operation of cabs of uniform appearance as to style and color scheme.
An attempt was made by the defendants to show that cabs similar in appearance to complainant's cabs had been operated prior to the time when the complainant adopted its present color scheme and the style and dress of its cabs. Other than to show that cabs had at times, and from time to time, been painted different shades of yellow, this attempt entirely failed. Furthermore, none of the persons who previously operated such painted cabs are now in this case. *Page 394 
In 1927 Simons purchased from the factory a reconditioned "Shaw cab," which is the cab built by the "Yellow Taxicab Company of Chicago." This cab was delivered to him in what is known in the trade as "in lead" — that is, it had a neutral or priming color, as a foundation for the finishing coat.
Simons painted it yellow, or as near as may be the color of the yellow cab operated by the complainants. He also painted, or caused to be painted, upon the doors of his car the words "public service," in a manner similar to the words on the doors of the complainant's taxicabs. He also painted a number upon the cowl of his car in the place used by the complainant to paint the number of their cars. This number painted thereon had no significance as a number, and its use could not be explained by the defendant, and was manifestly painted thereon to make more marked the resemblance to the complainant's cars.
On November 5th, 1926, Fisher purchased from one Myer Feldman a reconditioned Shaw cab, which was at that time painted yellow. Fisher had operated other cabs, which he had painted yellow. After he had been notified by the Yellow Cab Company to discontinue the use of one of these cars, and suit had been instituted against him, he left Atlantic City and discontinued the taxicab business in Atlantic City.
It should also be said in passing that the defendants also wore caps with an insignia thereon which closely resembled that worn by the chauffeurs of the complainant. This device was, from time to time, changed by the complainant. Its use, therefore, is only referred to as an additional evidence of the defendant's attempts to imitate the appearance of the complainant's cars and drivers.
I cannot do better than to paraphrase the language of Vice-Chancellor Leaming in Yellow Cab Co. v. Robert Knox, in an opinion not reported, on a hearing upon the return of an order to show cause why an injunction should not be granted.
"The case in its essential features is practically identical with that of Taxi and Yellow Taxi Operating Co. v. Martin,91 N.J. Eq. 233. *Page 395 
"There is not in my mind the slightest doubt but that the resemblance of defendants taxicab to the taxicabs of complainant will necessarily deceive the traveling public by leading people who seek taxicab service to believe that the taxicab of the defendant is a taxicab operated by complainant. Many of the passengers coming from the (trains) seeking a taxicab of complainant will inevitably enter defendant's cab in the belief that they are patronizing complainant's — it cannot be otherwise.
"Complainant's cars are * * * favorably known to the public and their peculiarly conspicuous color has brought them to the attention of almost every one who has occasion to use taxicabs, and the suggestion that passengers arriving upon a train with complainant's taxicabs in mind will be at all likely to observe the features of difference between complainant's cars and the cars of defendant cannot be seriously entertained; this is especially so at night when the minor points of difference are even less noticeable.
"There are points of difference. When the cars were placed side by side for the special purpose of inspection, these points of difference can be noticed.
"For obvious reasons the defendant did not paint the words "Yellow Cab Company" upon the doors of this car, but he did imitate the appearance thereof by the use of other words. The inspection of the cars clearly disclosed that by reason of the general appearance of the defendant's car, it will in practical operation necessarily be mistaken for one of the cars of complainant.
"The testimony produced by the defendant did not in any way change the resemblance of defendant's car to those operated by complainant. Nor did that testimony decrease the conviction that that similitude had been deliberately planned and obtained by the defendant."
Having found that the defendant's car is an imitation of that of complainant's, is the complainant entitled to relief? InYellow Cab v. Knox, supra, from which I have so voluminously quoted, it was said: "Complainant has not shown that any passengers have yet been deceived." In the present case there is some such testimony. *Page 396 
The defendant claims that the complainant taxicabs differed from the "yellow cabs" operated by it, and that under the telephone number of 6000 (that of the complainant) is listed a number of other names such as Bergdoll taxicabs, Black and White Cab Company, Checker Cab Company, Edwards Taxicabs, Yellow Cab Company and E.B. Yellow Cab Company. The officers of the complainant deny any responsibility for this listing. It is to be noted that these listings, with two exceptions, are the names or abbreviations of the names of this corporation at various times.
The defendant's claim, as set out in his brief, is: "Complainant cannot be heard in a court of equity to ask an injunction to restrain others from using a yellow cab unless we go far enough to reason that they might just as well ask this court to restrain anyone from using a cab painted in any if not all of the color combinations used by it in its operation of cabs. The Packard sedan is finished by the manufacturer in a dark blue color and in that color it is operated by the complainant. The query is, could complainant be heard to ask that the use of all blue-painted Packards be restrained as taxicabs in Atlantic City?"
No assistance is given in this brief to reply to this query, except the brief proceeds:
"The broad basis of the jurisdiction of this court in protecting the right of persons in business who seek to protect themselves from unfair competition is that they have originated some one thing that is of value to them in their business and that that thing, which they originated, was copied and simulated by some other person, in order either to deceive the public or to deprive the complainant of its right to this business. Surely the complainant cannot come into a court of equity and say that in Atlantic City it operates taxicabs under six names, all of which are totally dissimilar, and operate a half dozen different color combinations on cabs and then say that they are entitled to the injunction of this court to prevent any other person from using any name that the complainant is using, or any color combination that the complainant is using."
Upon the latter suggestion, it is sufficient to say that the *Page 397 
complainant asks no such relief — it prays that it may have the defendant restrained from operating a "yellow cab."
It might well be said that this court would not lend its aid in permitting any one individual or corporation to use all the colors of the spectrum in every conceivable combination and form, and thereby prevent any competition by reason of the fact that no other method of painting could be found.
Using Vice-Chancellor Backes' language in Taxi and Yellow TaxiOperating Co. v. Martin, supra:
"The motive and object of the defendants in adopting the get-up of the complainant's cab is palpable, and the conclusion is irresistible that they deliberately set out to annex the complainant's patronage by palming off their cabs for those of the complainant's. They had previously intimated their purpose, in confidence, to their friends. Such conduct in trade is unfair, unconscionable and fraudulent and will be enjoined.International Silver Co. v. Rogers, 67 N.J. Eq. 646; L. MartinCo. v. L. Martin Wilckes Co., 75 N.J. Eq. 257."
After stating the excuse there offered by the defendant, the vice-chancellor continues:
"But, even if this excuse were true, it would not avail, for, whether the similarity be calculated or accidental, if it appears that the resemblance necessarily or probably tends to deceive the public into the belief that the taxicabs of the defendants are those of the complainant, it would be prohibited as unfair trading. Confusion has, in fact, resulted from the close resemblance. The principles of law on the subject are so familiar to the student of the opinions of this court and the appellate court that extended citation of authorities would be useless labor. The latest expression of the doctrine concerning unfair trade is to be found in the opinion of the court of errors and appeals in Hilton v. Hilton, 90 N.J. Eq. 564, where many of the cases are gathered."
I find that the acts of each of the defendants were for the purpose of deceiving the public and fraudulently inducing them to patronizing a cab of the complainant company.
The prayer of the complainant's bill should be granted, and each defendant should be enjoined from the use and operation of said cab, in the fraudulent manner complained of. *Page 398