Complainant, alleging unfair competition in business, seeks an injunction. *Page 290 
J.B. Liebman Co., Inc., the complainant, operates a large department store at 726-728 Market Street, Philadelphia, Pennsylvania. It also operates branch stores in Wilmington, Delaware, and in Reading, Allentown, Lebanon and Easton, Pennsylvania. For many years it has solicited customers and business in the City of Camden and generally throughout southern New Jersey. Each month its salesmen-collectors contact from 10,000 to 12,000 of its active and inactive customers in Camden and South Jersey. Its regular yearly expenditure for advertising in newspapers circulating in Philadelphia and throughout the South Jersey area is from $75,000 to $85,000 and, eight times a year, it has distributed 100,000 special sale circulars in the same district. In recent years it has annually sold $600,000 worth of merchandise from its Philadelphia Store alone, half of which has been purchased by Camden and South Jersey customers.
The founder of complainant's business, and its president since a corporation was formed, is Joseph B. Liebman. The defendant Lester Leibman is his cousin. It should be here observed that not only do they spell their surnames differently but that the names are differently pronounced. They are both citizens of the United States by naturalization; the former applied for and obtained citizenship using the name Liebman, was drafted for military service in 1917 as Joseph B. Liebman and has used that name ever since; the latter became a citizen through the naturalization of his father Max Leibman. Lester Leibman was registered by that name as a citizen and a voter, was married by that name, and was registered by that name in the draft for the second World War; his parents and his brother bear the name Leibman, and Lester used that name continuously and exclusively until he was thirty years of age.
Max Leibman was a grocer and he and his two sons, Lester Leibman and Roy Leibman, operated a grocery store in Philadelphia until they failed in business; Joseph B. Liebman then advanced them six or eight thousand dollars to pay their business debts and secured employment for all three of them in complainant's Philadelphia store. Max Leibman and Roy Leibman are still employees of the complainant. *Page 291 
Lester Leibman worked as a salesman-collector for the complainant for about five years, then quit, without notice, to sell merchandise on his own account similar to that sold by the complainant and in the district where he had represented the complainant. His venture not succeeding, Lester Leibman formed a partnership with another ex-employee of complainant under the trade-name Quality Sales Company. The partnership was formed April 20th, 1936, and Lester then arbitrarily changed the spelling of his name from Leibman to Liebman. The partnership continued to operate in the district where Lester had represented J.B. Liebman Co., Inc., until three years ago when Lester opened a store under the name of Quality Sales Company at 1225 Broadway, in the City of Camden. The defendants L. Rose and E. Rose, his brothers-in-law, became his partners in this business. They sold furniture and furnishings on credit in competition with the complainant.
In October, 1942, defendants rented 1227 Broadway, at the corner of Liberty Street and Broadway, and stocked it with toys and novelties for the Christmas trade. Lester Leibman (now calling himself Liebman) took charge of that store; he posted signs in the display windows advertising it as "Liebman's Toyland." This slogan had been used by the complainant for several years to advertise its annual Christmas sale of toys and novelties and to designate an entire floor of its Philadelphia store, set aside for that purpose. The signs "Liebman's Toyland," as displayed by the defendants, strikingly resembled in size and lettering the words as printed and displayed by the complainant. In November, 1942, Joseph B. Liebman advised defendants that complainant objected to their use of his name "Liebman" and to their use and display of the words "Liebman's Toyland." Complainant then filed a bill in this court seeking an injunction, and a subpoena to answer was served upon Lester Leibman. The offending signs were then taken down and the equity suit was discontinued by consent.
Sometime after the toyland sign was removed from the show windows of the store at Broadway and Liberty Street, the defendants caused to be erected over those show windows *Page 292 
very large signs reading "L. Liebman Co." The new signs face both Broadway and Liberty Street. They are particularly noticeable because they are made up of separate cut-out letters painted white. Complainant charges that the defendants, in using the name "Liebman" and the signs "L. Liebman Co.," are unfairly competing with it in its merchandising field.
Defendants admit the essential allegations of the bill and seek to justify the use of the name "Liebman" and of the sign "L. Liebman Co." by asserting the right of Lester Leibman to change the spelling of his name to Liebman and to use that adopted name in their business. They filed an answer and a counter-claim: The answer states that Lester Leibman "changed the spelling of his name to correspond with that of his cousin, Joseph B. Liebman;" the counter-claim states that defendants posted "Liebman's Toyland" signs in the display windows of their store in October, 1942; that on November 25th, 1942, Joseph B. Liebman "telephoned the defendant, Lester Leibman and complained that the use of `Liebman's Toyland' was an infringement of the property right in that name theretofore used and enjoyed by complainant;" and, that the signs were removed November 27th, 1942. By their counter-claim defendants seek damages, charging complainant with vexatious and oppressive litigation in filing the equity suit which was later discontinued and in bringing a suit at law for damages against the defendant Lester Leibman which was subsequently dismissed for failure to file security for costs.
The law guards the good-will of a business and will protect the owner — and the public — against unlawful injury through unfair competition. Williamson Candy Co. v. Ucanco Candy Co.,3 Fed. Rep. 2d 156, 158; L. Martin Co. v. L. Martin WilckesCo., 75 N.J. Eq. 39; 71 Atl. Rep. 409; affirmed, 75 N.J. Eq. 257;72 Atl. Rep. 294. One who adopts a trade name for use in his business and builds upon it public good-will, acquires a property interest in both the trade name and the good-will which equity will protect. Robert H. Ingersoll Bros. v. Hahne Co.
(Court of Chancery). 89 N.J. Eq. 332; 108 Atl. Rep. 128. And, one who may *Page 293 
have some right or title to the use of a name will not be justified in adopting it for business use if the probable effect of so doing will be to lead the public to suppose that in purchasing his goods they are purchasing those of another.Seixo v. Provezende (1866), L.R. 1 Ch. 192.
The business success of Joseph B. Liebman and of the complainant company has been phenomenal. Complainant's good-will and the name by which it is generally known, "Liebman's," are valuable assets. Joseph B. Liebman was sixteen years of age when he arrived in the United States; he spoke no English. Four years later he started a merchandising sales business. In 1920 he formed a corporation, Aluminum Sales Company and became its president. In 1922 the corporation J.B. Liebman Co., Inc., was formed to take over the business of Aluminum Sales Company. Joseph B. Liebman was the president of the first company he formed, and he has always been president of the complainant corporation. In 1936 complainant took over two properties 726-728 Market Street, Philadelphia, Pennsylvania, and extensively improved them. There complainant conducts its principal business. In 1941 it sold merchandise to a total of $2,000,000.
From about 1920 until the present store was established, Joseph B. Liebman used his surname and "The Friendly Store" in advertising his business. Complainant's stationery and its advertising bore the words "Liebman's — The Friendly Store;" in all of its advertising it has identified itself as "Liebman's." When the present store properties were improved an impressive new front was constructed; across the width thereof, in large letters, is the one word "Liebman's."
The primary question to be here determined is whether the use by the defendants in connection with their business of the name "Liebman" and the trade name "L. Liebman Co." constitutes such unfair competition with complainant as will move this court to prevent such use by injunction. Defendants maintain that they are entitled to use the name "Liebman" and the trade name "L. Liebman Co." because, as they say, Liebman is the present name of the defendant Lester. His family emigrated from Russia. The testimony was to *Page 294 
the effect that in Russia the name was pronounced as if spelled Labman or Labman, that is, sometimes as if the first "a" in the name were pronounced short, and sometimes as if that "a" were pronounced long. However the Russian name might appear literally translated into English, the defendant Lester is identified in the United States with and by the name Leibman, the diphthong pronounced like a long "i." By that name he became and is a naturalized citizen; that name he has never had legally changed. It is, however, immaterial: Had Lester Leibman's father adopted the same spelling and the same pronunciation of the name that his nephew Joseph did, or had there been effected a legal change of the name from Leibman to Liebman, nevertheless the defendants would not be justified in using that name in unfair business competition with the complainant.
Obviously, after one has borne a name for thirty years, one does not drop that name and adopt another without reason. In the answer of the defendants it is alleged that Lester Leibman realized that "it was improper that there should be a variance in the spelling of the family name," and thereupon "changed the spelling of his name to correspond with that of his cousin, Joseph B. Liebman." Examined as a witness, Lester Leibman declared that he had not suggested such a reason to his solicitor when the answer was to be prepared and filed; he testified that he changed his name for no reason except that he suddenly came to realize Liebman sounded better than Leibman. He had not chosen to use the name Liebman when he was associated in business with his cousin; not until he had quit the employment of the complainant and had come to realize that he could not make a success of selling merchandise on his own account did he begin to use the name Liebman. Again, when he and his present associates decided to open a new store and promote a Christmas toy sale, he identified and advertised it by placing, in the show windows, a likeness of the slogan adopted and popularized in the Philadelphia-South Jersey district over a period of years by the complainant. While the toyland signs were in the show windows of the defendants' store, a number of customers or prospective customers asked Lester Leibman, his associates and *Page 295 
their employees, if the store was a branch of complainant's Philadelphia store. Lester Leibman testified that he personally answered "about six" such inquiries in "just the few days I had this `Liebman's Toyland' sign up."
It was after complainant's protest to Lester Leibman, the institution of an injunction suit, the removal of the sign and the discontinuance of the action, that defendants erected the present large signs over the show windows on Liberty Street and on Broadway.
I am convinced that defendants chose to erect the present signs "L. Liebman Co." because they had come to realize the drawing power of the name Liebman with the public through the inquiries made when that name appeared in their window. Their explanation that the name was used only because of their desire to distinguish between their new store in which goods were to be sold for cash and their adjoining store where goods were sold on credit, is, in view of the circumstances, incredible. While the corporate name of complainant is J.B. Liebman Co., Inc., it has educated its customers and the public to think of its store and business as "Liebman's."
Whether the use of the name "Liebman" and the signs "L. Liebman Co." in connection with the defendants' business is calculated to mislead the public must be resolved from the standpoint of ordinary purchasers like the six who questioned Lester Leibman.A. Hollander Son, Inc., v. Philip A. Singer, c., Inc.,119 N.J. Eq. 52; 180 Atl. Rep. 671; affirmed, per curiam, 120 N.J. Eq. 76; 183 Atl. Rep. 296. A nice discrimination is not expected from the ordinary purchaser and neither actual confusion nor actual fraudulent intent need be shown where the necessary and probable tendency of the defendants' conduct is to deceive the public and pass off their merchandise or business as and for that of the complainant. Similarity, not necessarily identity of names, is recognized as the basis for relief. Hilton v.Hilton (Court of Errors and Appeals), 90 N.J. Eq. 564, 567;107 Atl. Rep. 263; Cotex Corp. v. Oxtex Corp. (Court ofErrors and Appeals), 121 N.J. Eq. 377; 187 Atl. Rep. 750. The consequences of defendants' acts, not the motive for them, determines whether this court should interfere to protect the *Page 296 
complainant in the custom and patronage, which complainant and its president have built up by and around the use of its and his name. Polackoff v. Sunkin (Court of Errors and Appeals),115 N.J. Eq. 134; 169 Atl. Rep. 724.
The prayer of complainant's bill is that defendants shall be forthwith restrained from selling merchandise to the general public in Camden and vicinity under the name "Liebman's" or "L. Liebman Co.," or from using said name or any variant thereof in the State of New Jersey in connection with said business. There has been no testimony that complainant has any trade or business in New Jersey except in Burlington and in the state south of that city. I shall, therefore, advise a decree restraining the defendants from in anywise selling merchandise to the general public in the City of Burlington, New Jersey, and in the State of New Jersey south of the City of Burlington under the name "Liebman" or under "Liebman's" or "L. Liebman Co.," or from using the name Liebman in connection with their present or any other merchandising business in competition with the complainant in that city and that portion of South Jersey.
Complainant by its bill also prayed an accounting for profits made or enjoyed by the defendants from the use of the name "L. Liebman Co." or "Liebman's" and a decree against defendants requiring them to pay over such profits to the complainant. This relief was not urged upon final hearing and argument; I assume that this prayer has been abandoned. If not, counsel will be heard on presentation of a form of decree. Defendants' counter-claim will be dismissed. *Page 297