LOCATELLI, Inc., and Umberto Locatelli, Giovanni Locatelli, Ercole Locatelli, Antonio Locatelli, Albert Locatelli, Alfredo Locatelli and Lodovico Locatelli, co-partners doing business as "Mattia Locatelli," Plaintiffs,

v.

Louis TOMAIUOLI and Frank Tomaiuoli, co-partners doing business under the firm name and style of "Lucatelli Packing Company," Defendants.

Civ. A. No. 795-50.

United States District Court, D. New Jersey.

March 10, 1955.

Hollander & Leichter, Union City, N. J., by Samuel F. Frank, New York City, for plaintiffs.

Charles F. Echentille, Union City, N. J., by Otto Riemenschneider, Union City, N. J., for defendants.

MODARELLI, District Judge.

This is an action based on unfair competition. Plaintiffs are Locatelli, Inc., a New York corporation, operating a wholesale Italian grocery business, and

seven members of the Locatelli family, (citizens and residents of Italy) who are co-partners doing business as Mattia Locatelli (principal office in Italy). Defendants are Louis and Frank Tomaiuoli, (citizens and residents of New Jersey) co-partners doing business in New Jersey as Lucatelli Packing Company. Plaintiffs, who use the name "Locatelli," seek damages and an injunction against defendants from using the name "Lucatelli."

This court, sitting without a jury, heard argument by counsel only. The parties stipulated that the testimony and exhibits previously used in the litigation between the same parties in the United States Patent Office be used as the evidence in this case. That prior litigation was an opposition proceeding in which the defendants herein pursuant to the Lanham Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq., unsuccessfully sought to register on the Principal Register their name—"Lucatelli"—for edible oils.

The firm of Mattia Locatelli, plaintiffs' predecessor, began operations in or about the year 1860 at Lecco, Italy. The plaintiffs now produce, manufacture, sell, import, and distribute Italian food products throughout the United States. Plaintiffs began operations in the United States in 1904 when they opened an office in New York City. Today, 60% of their business is cheese; 15%, meat products; 10%, tomato paste; and 5%, antipasto.

Their annual sales for the years 1921 through 1949 ranged from $278,795 in 1941 to $3,670,912 in 1946; during the 18 years from 1922 through 1939, in 9 years, sales were at least $1,000,000, in 8 years, at least $2,000,000, and in 1928, $3,246,852. The 1946 sales figure was $3,670,912; 1947, $1,169,384; 1948, $1,-893,838; 1949, $2,442,097. Their annual advertising expenses from 1921 through 1949 ranged from $964 in 1940 to $45,824 in 1935; from 1930 through 1938 plaintiffs spent $221,688; from 1921 through 1929, $35,261; from 1939 through 1949, $31,703. The evidence is that the name "Locatelli" was prominently displayed in the printed advertisements. Defendants did not submit any evidence as was done by plaintiffs to show the extent of its advertising expenses.

Since 1948, plaintiffs have imported olive oil into the United States totaling approximately 10,000 cases in 1948, 1949, and 1950; they sell it exclusively to importers, wholesalers, and jobbers. Plaintiffs first sales of olive oil under the label "Locatelli" were in 1928 when 100 cases were sold; subsequently, however, plaintiffs did not use that name on their oil product until 1948.

Defendant Frank Tomaiuoli first knew of plaintiffs' firm around 1920 or 1921. Defendants' explanation of their choice of the name "Lucatelli" is that Michael Anthony Lucatelli, who was born in 1872, in Vico del Gargano, Province of Foggia, Italy, was an "old friend of the family and a very distant relative of ours;" in late 1923, Lucatelli shipped about 75 cases of olive oil and dry olives from Italy to defendants in the United States; a few months later, defendants received another shipment of the same quantity of oil; and since Lucatelli was unable properly to package the oil, he authorized defendants to use his name on cans supplied by others. Lucatelli died in 1940.

Olive oil sales which were 60% of defendants' business in 1942, increased to about 90% in 1950. Defendants' sales for the period from 1942 through 1950 totaled $1,671,757.18, the highest amount having been $333,227.20 in 1950. Defendants sell to jobbers and retail grocers located in the metropolitan areas of New York City so that their allegedly unfair competitive conduct occurred in the states of New York and New Jersey.

The nature of the Italian food industry is such that the retail seller of cheese products also sells olive oil because both products are generally used together by the housewife, who usually is but not necessarily of Italian descent. There is no dispute that plaintiffs' reputation mainly is based on the calibre of their cheese products and that their name

"Locatelli" mainly has been used in connection with cheese, meat, tomato paste, and antipasto.

■ For our purposes, all of the operative facts in this case occurred in New Jersey, which case is here by diversity of citizenship only, and the substantive law of New Jersey governs. As to the acts complained of which occurred outside New Jersey, that state's conflict of laws rule applies. Browning King Co. of New York v. Browning King Co., 3 Cir., 176 F.2d 105; Campbell Soup Co. v. Armour & Co., 3 Cir., 175 F.2d 795, certiorari denied 338 U.S. 847, 70 S.Ct. 88, 94 L.Ed. 518; Adam Hat Stores, Inc. v. Lefco, 3 Cir., 134 F.2d 101. As will be discussed below, however, in this case it is unnecessary for the court to decide what substantive law a New Jersey court would apply to the events occurring in New York State.

■ Although plaintiffs' counsel in his brief states that the action is based on unfair competition and infringement, the complaint does not allege the latter cause of action. Under New Jersey law, however, the distinction between the two theories now is unimportant. See American Shops, Inc. v. American Fashion Shops, etc., 13 N.J.Super. 416, 80 A.2d 575. Further, while the complaint does not allege that the name "Locatelli" is registered pursuant to the Federal Trade-Mark Act of 1905, 15 U.S.C.A. § 81 et seq., now replaced by the Lanham Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq., there is evidence that registration of the name Locatelli for cheese was issued May 15, 1934, and that there are six other registrations for cheese issued to plaintiffs; an eighth registration is of a design with the name Locatelli, used as a trade-mark for tomato paste.

As to the Lanham Act and the governing law thereunder, in Campbell Soup Co. v. Armour & Co., 3 Cir., 175 F.2d 795, at page 797, certiorari denied 338 U.S. 847, 70 S.Ct. 88, 94 L.Ed. 518, the court said:

"Here we have a claim for unfair competition generally and also a claim for trade-mark infringement with reliance upon the federal statute as to registration [Federal Trade-Mark Act of 1905, 15 U.S.C.A. § 81 et seq., now replaced by the Lanham Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq.] The unfair competition matter is, as said above, one for state law. * * * What about the trade-mark infringement in this instance?"

The court did not answer its question, but noted (a) the trade-mark registration statute expressly confers jurisdiction on federal courts for litigation arising under it, and (b) the matter is essentially one of state property law. Thus, the court indicated that the choice of law should be state law. Moreover, the court has not been referred to nor has it found a split of federal and state rules of unfair competition. Sears, Roebuck & Co. v. Johnson, 3 Cir., 219 F.2d 590; Q-Tips, Inc. v. Johnson & Johnson, 3 Cir., 206 F.2d 144, certiorari denied, sub nom. Johnson & Johnson v. Q-Tips, Inc., 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377.

Based on the foregoing, the court concludes that the governing law in this case is New Jersey's substantive law of unfair competition.

■■ Under the applicable New Jersey law, plaintiffs must prove that their name "Locatelli" has gained a secondary meaning. French American Reeds Mfg. Co. v. Park Plastics Co., 20 N.J.Super. 325, 90 A.2d 50, was an action to restrain unfair competition in the manufacture and sale of plastic ukeleles. The court, although holding that secondary meaning had not been proved, applied the following test: Has the product (in the case at bar, the trade-name) been in the market a sufficient length of time and with such degree of success as to acquire a secondary meaning in that it is associated in the public mind with the first comer as the manufacturer or source so that the public will believe the goods have come from the first and will buy, in part, at least, because of that belief. Is the public moved in any degree to buy the item be-

cause of its source? 20 N.J.Super. at page 338, 90 A.2d at page 57, the court said:

"The ultimate test of secondary meaning must always remain whether plaintiff's product in its distinctive trade dress has become broadly known to the public as indicating a certain origin. The length of time required under this test cannot be measured as a matter of law by any positive criterion."

Has plaintiff herein successfully met this test?

■ The evidence relevant to the question of secondary meaning is: (a) the period of time the name has been used, (b) the nature and extent of advertising expenditures, (c) sales volume. Squeezit Corp. v. Plastic Dispensers, Inc., 31 N.J. Super. 217, 225, 106 A.2d 322; B. Di-Medio & Sons, Inc. v. Camden Lumber & Millwork Co., Inc., 23 N.J.Super. 365, 93 A.2d 45; French American Reeds Mfg. Co. v. Park Plastics Co., supra. In this case, there is convincing evidence establishing an association between the name "Locatelli" and plaintiffs as the source of the Italian food products in the minds of a segment of the public. Plaintiffs have used the name "Locatelli" in the United States since the year 1904; the extent of plaintiffs' advertising expenses and sales volume is shown above. Moreover, defendant Frank Tomaiuoli testified to the effect that the name "Locatelli" means plaintiffs' cheese; an importer of Italian food products testified that that name on an Italian food product indicates to the consumer that plaintiffs are the source; and as long ago as 1922, that name indicated plaintiffs to the public, according to the testimony of a former commercial attache of the Italian Embassy in the United States.

■ The court concludes that the name "Locatelli" has acquired a secondary meaning to purchasers of Italian food products and indicates plaintiffs as the source of those products.

■■ The fact that plaintiffs did not extensively use their name "Locatelli" in connection with olive oil prior to defendants' use of their name "Lucatelli" in connection with olive oil does not detract from the secondary meaning of plaintiffs' name. Furthermore, defendants contend that plaintiffs have no rights under the law of unfair competition because their failure extensively to use their name in connection with olive oil is evidence they abandoned their prior use of their name. As has been discussed, however, plaintiffs have continuously used their name on Italian food products and as the result of that use and the exploitation of the name, it has achieved a secondary meaning. Although plaintiffs did not begin to use their name in connection with olive oil until 1948, nevertheless, in connection with other products there is evidence of their consistent and extensive use prior thereto, so that the doctrine of abandonment—nonuse—is inapplicable. Such circumstances, however, are relevant to the issue of probable consumer confusion, which plaintiffs must prove to win an injunction. American Shops, Inc., v. American Fashion Shops, etc., 13 N.J. Super. 416, 80 A.2d 575; Goldscheider v. Schnitzer, 3 N.J.Super. 425, 66 A.2d 457.

Prior to defendants' use, plaintiffs had continuously used their name in connection with the sale of cheese and other Italian food products. Thus the precise issue as to consumer confusion is whether plaintiffs' use since 1904 of the name "Locatelli" on its cheese, meat, tomato paste, and antipasto, and defendants' use since 1940 of the name "Lucatelli", with the normally open end of the letter "u" nearly closed and resembling the letter "o", on its olive oil now causes public confusion as to the source of defendants' oil. The year 1940 is chosen because it appears that at that time (the evidence as to the date is unclear) defendants eliminated the name "Michele" from their labels and also altered the letter design to nearly close-up the letter "u". Defendants' motives in thus changing its label are open to great suspicion and do not create a favorable impression.

"A nice discrimination is not expected from the ordinary purchaser and neither actual confusion nor actual fraudulent intent need be shown where the necessary and probable tendency * * *" is to deceive the public, thereby allowing defendants to palm-off their goods as those of the plaintiffs. J. B. Liebman & Co., Inc. v. Leibman, 135 N.J.Eq. 288, 295, 38 A.2d 187. Whether or not plaintiffs and defendants are competitors and if they are, the nature and degree of their competition is but another phrasing—and imprecise—of the issue of consumer confusion in that such factors merely are relevant to that issue. Moreover, " * * * the modern invocation of equity ought to depend more predominantly upon the character of the unfairness than upon the degree of competition. * * *" Goldscheider v. Schnitzer, 3 N.J.Super. 425, 429, 66 A.2d 457, 459; see also Restatement, Torts, § 730 (1938). And harm to plaintiffs' trade may be inferred from a finding of consumer confusion, American Shops, Inc. v. American Fashion Shops, etc., supra, because the interest protected by the courts is a property right. See Campbell Soup Co. v. Armour & Co., 3 Cir., 175 F.2d 795, certiorari denied 338 U.S. 847, 70 S.Ct. 88, 94 L.Ed. 518; 51 West 51st Corp. v. Roland, 139 N.J.Eq. 156, 50 A.2d 369.

Furthermore, although counsel for plaintiffs argues that defendants fraudulently adopted the name "Lucatelli" the court need not decide that issue as the test is not motive or premeditated intent to harm plaintiffs or to deceive the public. J. B. Liebman & Co., Inc. v. Leibman, supra; Delaware, Lackawanna & Western R. v. Lackawanna Motor Freight Lines, 117 N.J.Eq. 385, 175 A. 905; Evening Journal Ass'n v. Jersey Pub. Co., 96 N.J.Eq. 54, 56, 124 A. 767; Wirtz v. Eagle Bottling Co., 50 N.J.Eq. 164, 24 A. 658. See B. DiMedio & Sons, Inc. v. Camden Lumber & Millwork Co., Inc., supra. Accord Lorraine Mfg. Co. v. Lorraine Mfg. Co., D.C., 101 F.Supp. 967 and cases cited therein; In International Allied Printing Trades Ass'n v. Master Printers Union, D.C., 34 F.Supp. 178, 181, pertinent New Jersey State Court decisions are cited. The consequences of a defendant's conduct predominate over the quality of his motive. Liebman & Co., Inc., v. Leibman, 135 N.J.Eq. 288, 38 A.2d 187. If there is a likelihood that consumers are confused as to the origin of defendants' olive oil, then plaintiff is entitled to relief.

Complete identity of names is not a necessity for relief, yet the similarity must be such as in reasonable probability will deceive purchasers exercising ordinary discrimination. Goldscheider v. Schnitzer, 3 N.J.Super. 425, 66 A.2d 457; J. B. Liebman & Co., Inc. v. Leibman, 135 N.J.Eq. 288, 295, 38 A.2d 187; International Silver Co. v. William H. Rogers Corp., 67 N.J.Eq. 646, 650, 60 A. 187. The likelihood of consumer misguidance is the standard of permissible similarity; plaintiffs need not prove actual confusion. Goldscheider v. Schnitzer, supra. The difference between the two names is barely discernible. At sight, the "u" in "Lucatelli" so closely resembles the "o" in "Locatelli" that there is a likelihood of consumer misguidance. Moreover, there is testimony that when spoken in Italian, the two names are pronounced the same. Whether the consumer, who is usually of Italian descent, himself takes the labeled product from the retailer's shelf, or orally asks the retailer for the product, there is likelihood of confusion.

Plaintiffs' laches, however, makes a decision in this case somewhat difficult. In 1928, plaintiffs learned that the name Lucatelli was being used by defendants in connection with olive oil and one of plaintiffs' corporate officers visited defendants' place of business and told them to watch their step. Subsequent to that warning, plaintiffs did nothing to protect their trade name rights until 1948 when defendants sought to register their name. Meanwhile, for twenty years defendants continued to use their name in expanding business in the same New York metropolitan area in

which plaintiffs operated. Such facts refute the explanation offered by plaintiffs —that they had no knowledge of defendants' continued use of the name "Lucatelli." Laches bars the recovery of damages, but it is not a bar to an injunction. McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828; Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526, both cases cited with approval in Uco Food Corp. v. Fishman, 135 N.J.Eq. 168, 37 A.2d 671; American Shops, Inc. v. American Fashion Shops, etc., 13 N.J.Super. 416, 80 A.2d 575; Keith Co. v. Greenberg, 134 N.J.Eq. 182, 34 A.2d 639; Blue Goose Auto Service v. Blue Goose Super Service, 110 N.J.Eq. 547, 160 A. 316; International Silver Co. v. William H. Rogers Corp., 66 N.J.Eq. 140, 57 A. 725, affirmed in part and reversed in part on other grounds, 67 N.J.Eq. 646, 60 A. 187. As has been discussed, this court must apply the substantive law of the State of New Jersey. The line of cases cited immediately above clearly set forth a principle without any qualification or limitation; this court cannot violate the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and the choice of law cases cited above by rendering a decision contrary to that which the state court precedents indicate the state court would render in the same case. However great be a federal judge's desire to "do equity," when confronted with such settled state court precedent, he is helpless unless he engages in disingenuous judicial legerdemain. While there is no New Jersey case in support, the dilemma now confronting this court arising from the findings of probable consumer confusion plus laches is clearly stated in Nims, the Law of Unfair Competition & Trade Marks, 4th Ed. (1947) § 409, pp. 1289, 1290.

"The application of the doctrine of laches is especially difficult in trade-mark cases because it is vital to the existence of a trade-mark that it should be used by one and by only one concern. A trade-mark cannot serve two masters; it cannot identify two sources at the same time and remain a trade-mark. Consequently, if the court enforces the doctrine of laches, such a decision is tantamount to holding that thereafter, two concerns (i. e., the plaintiff and the defendant) may legally use the mark in question on the same or on closely related products, which means that the court, in effect, has compelled the plaintiff to license the defendant to use its mark. Such a decree creates a situation in which the mark appears before the public as identifying, not one concern, but two; and where a symbol or name is used on similar goods by two or more at the same time, it loses distinctiveness and usefulness as a means of identification and instead of functioning as a public convenience as every trade-mark should, it may be a source of confusion.

"The case is easily imagined where the first user of a mark sleeps on his rights while another builds up a substantial business under a similar mark. Under such circumstances, denial of relief to the first user may be equitable; but to enjoin the second-comer may result in unjust enrichment of the first user because he may profit by the efforts of the second user to popularize the mark. [citing Dwinell-Wright Co. v. White House Milk Co., 44 F.Supp. 423, (D.C.) W.D.N.Y.1942, aff. 132 F.2d 822, C.A.2, 1943] If the trade-marks involved, are similar but not identical, or if they are identical, but the goods on which they are used are not entirely the same, the public may learn to distinguish between the first and the second user; and in fact may already have done so during the period of laches, before suit was brought. But if the trade-marks are identical and the goods made by the first and second user are the same, the result must be confusion of the public. The first user still has a trade-mark, in a technical sense, and his right to enjoin other infringers has not nec-

essarily vanished, but his trade-mark no longer has that distinctiveness which gives to a trade-mark its significance and its value.

"Where the goods manufactured by the first and second users are not the same or where the trade-marks involved are not identical, though confusingly similar, the damage to the owner of the original trade-mark may still be considerable. The owner of a trade-mark who is estopped from prohibiting its use by another on closely related goods may find that his right to extend his business under it has been greatly circumscribed. * * * Laches, indeed acquiescence of many years, while a non-competitive but intimately related business is being built up, is usually conclusive against awarding an injunction.[1] The degree of exclusiveness of a name thus depends not only upon its distinctiveness, but also upon the owner's vigilance in protecting it. Lack of reasonable protection and failure to use reasonable promptness in such protection may endanger any mark."

Although this court looks to the New Jersey conflict of laws rule for the governing substantive law to apply to the complained of acts occurring in New York, it is unnecessary to decide what is that rule of reference. For if the injunction is to be effective its force must be extended across the geographical boundary of New Jersey into New York. Moreover, New York law does not differ from that of New Jersey. Tiffany & Co. v. Tiffany Productions, Inc., 147 N.Y. Misc. 679, 264 N.Y.S. 459, affirmed 237 App.Div. 801, 260 N.Y.S. 821; Id., 262 N.Y. 482, 188 N.E. 30; Ball v. Broadway Bazaar, 194 N.Y. 429, 87 N.E. 674, so that the result would be the same whether the New Jersey rule of reference would direct this court to the substantive law of New Jersey or of New York.

Defendants counterclaim alleging unfair competition resulting from plaintiffs' entry into the olive oil business is dismissed. The theory of the counterclaim is that plaintiffs entered the olive oil business solely for the purpose of capitalizing upon the good-will developed by defendants' exploitation of their name for their olive oil. Defendants did not seriously pursue their counterclaim either during oral argument or in their brief. And wisely, for plaintiffs did not unfairly compete in expanding their business to include a related product and using its trade-name which had acquired a secondary meaning.

Defendants will be enjoined from continuing their use of the name Lucatelli. There was no proof of damage by the plaintiffs and so none will be assessed against the defendants. There will be a judgment for the plaintiffs on the defendants' counterclaim. Costs of this action to be divided between the plaintiffs and the defendants.

An order may be submitted in conformity with the opinion herein expressed.

---

1. Nims gives no authority for this proposition and it is not the law of New Jersey.